HUGH A. McMULLEN, State Comptroller,

*vs.*

FRANK H. ZOUCK, CLINTON UHL and JOHN F. MUDD, Constituting the State Roads Commission.

*Annual appropriation of State funds, for special purposes: unexpended balances; question of reversion to Treasury; intention of Legislature.*

There is no general law that money for any special fund not withdrawn in the fiscal year for which it was appropriated by the Legislature, must revert to the State Treasury's general funds, to be withdrawn therefrom thereafter only by special legislation.                                    p. 548

Ch. 225 of the Acts of 1904 created a state-aided road fund, under the care of the State Geological and Economic Survey, and authorized and directed an annual appropriation to it of $200,000, "or so much thereof as may be necessary." The Act of 1910 (Ch. 217) transferred the powers and duty of the Act of 1904 to the State Roads Commission, and transferred to it the unexpended balance in the hands of the former board; this Act further provided that contracts made and obligations created under the Act of 1904 should be assumed by the State Roads Commission; the annual appropriation was increased from $200,000 to $300,000 or "so much thereof as might be necessary"; for several years unexpended balances remaining at the end of any fiscal year were transferred to the credit of the State Roads Commission for the year next ensuing; in the year 1915, however, there was a balance of $200,797.39 of this road fund which had not been drawn by the State Roads Commission, although there were at the time outstanding obligations of the Commission chargeable to the fund amount-

ing to $220,924.38; the Comptroller converted this undrawn balance into the general funds of the State Treasury; an application was made to compel the Comptroller to restore said fund to the credit of the State Roads Commission; the necessity of a formal writ of mandamus was waived; the parties treating the court's order for the return of the funds to the State Roads Commission as having that effect; on appeal from such order it was: *Held,* that it was clear that the Legislature intended the entire amount of the annual appropriation to be expended on the state-aided roads, if it was found necessary in order to carry out the provisions of the Act, and that this intention should not be defeated merely because of the failure of the State Roads Commission at the close of its year to file a statement showing their outstanding obligations, and the order appealed from was sustained.                                    pp. 549-550

Where by an Act of the Legislature for a special purpose, there is dedicated a special annual fund, or "so much thereof as may be found necessary," the question of whether any unexpended balance remaining at the end of any fiscal year should revert to the general funds of the State Treasury depends upon what was the legislative intent in passing the Act.    pp. 549-550

*Decided March 13th, 1917.*

Appeal from the Baltimore City Court.    (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

The appellant, *Hugh A. McMullen, the Comptroller,* submitted a brief in his own behalf.

*Albert C. Ritchie, the Attorney-General,* argued the case for the appellees.

PATTISON, J., delivered the opinion of the Court.

The Acts of 1904, Chapter 225, passed for the improvement of the highways, provided for State aid in the construction of roads within the State and placed the construction of such roads under the supervision and direction of the State Geological and Economic Survey, established under the Act of 1896, Chapter 51.

The State, by the Act of 1904, was limited in its expenditure to one-half of the estimated cost of the construction of said roads, ascertained by the provisions of said Act.

To meet the burden so imposed upon the State the Act provided that "the sum of two hundred thousand dollars annually, or so much thereof as may be necessary, be and is hereby appropriated, out of any money in the Treasury not otherwise appropriated, for the purpose of carrying out the provisions of this Act."

In the distribution of the money, so appropriated, among the counties of the State, the Act provides:

"That no one county of the State shall receive in any year a larger proportion of the total amount appropriated by this Act for said year than the proportion which the then existing miles of public road in said county bear to the then existing miles of public road in all of the counties applying as determined by the said Commission, unless a balance remains unallotted under the arrangement above prescribed, in which event said balance may be apportioned in the same manner among the counties which have not received the full amount of their applications."

The Act of 1908, Chapter 141, created and established the "State Roads Commission," and the Act of 1910, Chapter 217, transferred "the duties and powers of the Geological and Economic Survey (conferred upon it under the Act of 1904), together with all accounts, records, contracts, obligations, *unexpended balances* and all property and things appertaining to the same," to the State Roads Commission.

The Act further provides (section 48) that:

"The sum of two hundred thousand dollars, annually, or so much thereof as may be necessary, is hereby appropriated, out of any money in the Treasury not otherwise appropriated for the purpose of carrying·out the provisions of this sub-title, heretofore under the authority of the State Geological and Economic Survey, * * * and in so far as proper and lawful contracts may have been duly entered into and made by the said State Geological and Economic Survey under the powers heretofore conferred upon it; and that from and after the passage of this Act transferring the powers and duties set forth in this sub-title to the State Roads Commission, the said State Roads Commission may and shall continue to carry out and perform all such lawful contracts heretofore entered into as aforesaid before such transfer out of the said sum of two hundred thousand dollars annually appropriated as aforesaid, *or so much thereof as may be necessary.* The State Roads Commission is hereby further authorized to continue to contract for such expenditures as the said Geological and Economic Survey Commission might have contracted for."

By the Act of 1912 (Ch. 121) the annual appropriation for state aided roads was increased from two hundred thousand dollars to three hundred thousand dollars, but in all other respects the Act of 1910 remained unchanged.

The fiscal year of the State of Maryland ends on the 30th day of September of each year. In the years 1906, 1907 and 1908 the balance remaining unexpended at the close of each of said years was reverted to the Treasury of the State. In each of the succeeding years, however, commencing with the year 1909 and ending with the year 1914, the unexpended balance for each of said years, representing the extent to which such annual appropriations had not been actually withdrawn or paid out, were not reverted to the State Treasury. In the year 1909 such unexpended balance was, on the first

day of October, carried down to the credit of the Geological
and Economic Survey, and on October the first in each of the
succeeding years, to and including the year 1914, such unex-
pended balance was carried to the credit of the State Roads
Commission.

At the close of the fiscal year 1915, there remained of said
fund not actually paid out by the Commission, the sum of
$200,797.39, but at that time there were outstanding obliga-
tions of the Commission, chargeable to this fund amounting
to $220,924.28. These obligations arose from contracts pre-
viously made by the Commission for the construction of a
great number of state aided roads in the different counties
of the State.

In some instances the work under these contracts had been
completed and the consideration therefor was at that time
due and payable, while in others the work was still unfin-
ished. It seems, however, that at such time no statements
had been filed with the Comptroller showing any outstanding
contracts, or obligations arising thereunder, against said
balance; and upon the advice of the Attorney-General at that
time, that all such unexpended balance at the end of the
fiscal year reverted to the General Treasury unless there
were outstanding contracts against the same, and it not ap-
pearing from the records of the office that there were such
outstanding contracts, the Comptroller, now the Governor
of the State, reverted the balance of said fund, amounting,
as we have said, to the sum of $200,797.39 to the Treasury
of the State.

The respondent, the present Comptroller, was thereafter in
January, 1916, called upon to restore the said sum to the
credit of the State Roads Commission, and although advised
by the Attorney-General that said sum was wrongfully
reverted and should be restored to the credit of the Commis-
sion, he declined to withdraw so large a sum from the Treas-
ury of the State, to which it had been reverted by his prede-
cessor, and place it to the Commission's credit, without first

submitting to a Court of competent jurisdiction the question whether he should do so.

The contention of the respondent, as disclosed by his answer, is that when said sum reverted to the General Treasury it became incorporated with, and a part of, specially dedicated funds that had hitherto been encroached upon, and that it could be withdrawn therefrom only by legislative authority. Under the facts and circumstances of this case and the understanding of the respondent as to his powers and duties in relation thereto, his reluctance to act as requested may very easily be understood, and feeling as he did he very naturally and properly asked that the question be submitted to a Court of competent jurisdiction for its determination.

As a result of the position taken by the Comptroller, the State Roads Commission filed its petition asking for the writ of mandamus requiring him to transfer the aforesaid sum from the General Treasury of the State to the credit of the State Roads Commission.

In its petition the Commission alleges, in addition to the facts we have stated, that there are ample funds in the Treasury of the State from which the said sum may be withdrawn and placed to the credit of the Commission. It further alleges that there was "a cash balance in the general fund to meet obligations as of October 1st, 1916, of $447,328.20 which can be used without encroaching upon the dedicated funds to restore to the credit of the State Roads Commission the said sum of $200,797.39. It also alleges "that after a detailed statement of the estimated receipts and disbursements of the State during the present fiscal year, the estimated cash balance, after deducting estimated expenditures during said year, remaining in the Treasury for general purposes on October 1st, 1917, will be $515,044.29.

The respondent answered the petition and to his answer a general replication was filed.

In the record is found an agreed statement of facts in which all of the essential and material allegations of the petition are admitted to be true, and by it all errors in pleading are waived.

Upon the submission of the case to the Court below, the learned Judge reached the conclusion that the respondent should restore to the credit of the State Roads Commission the said sum of $200,797.39 that was reverted to the Treasury at the end of the fiscal year 1915, and passed an order to that effect.

The necessity for the issuance of a writ of mandamus was waived and the order that was passed, to the form of which no objection was made, was treated by the parties as an order for the issuance of a writ. It is from that order that this appeal is taken.

The sole question presented is whether the sum of $200,-797.39, the amount of the State aided road fund not actually paid out at the close of the fiscal year 1915 and which was at that time reverted to the General Treasury of the State should be withdrawn therefrom and restored to the credit of the State Roads Commission.

In *Maryland Agricultural College* v. *Atkinson,* 102 Md. 557, the respondent, the Comptroller of the Treasury, refused to pay over to the Agricultural College an appropriation of five thousand dollars, under the Act of 1902, Chapter 625, for the maintenance, repairs and improvements of its buildings, etc., and the sum of $2,000 an unexpended balance of an appropriation, under the Act of 1904, Chapter 557, for the formation and support of a Farmers Institute in this State, basing his refusal upon the ground that neither of these sums or any part thereof could be lawfully drawn from the State Treasury after the expiration of the fiscal year for which they were appropriated, and as it appeared that these sums were not paid during the fiscal year for which the appropriation was made there was no warraant of law by which they could thereafter be paid.

It was admitted that the work contemplated to be done under the Act of 1902 had been done, but the appropriation had not been paid. It was also admitted that $2,000 of the appropriation of $6,000 made by the Act of 1904, Chapter 557, remained unpaid, and it was further admitted that said sums so appropriated were at the time in the Treasury of the State.

We there said: "There is no general law which declares that money not drawn in the fiscal year for which it has been appropriated can not be drawn thereafter.

"It is to be noted that there is no duty imposed by either Act upon the Maryland Agricultural College to make application for the payment of the appropriations within a specified time, but the authority is given to the Comptroller to draw his warrant upon the Treasurer for the payment of the several sums appropriated to the order of the college, and he is directed to draw his warrant for the first payment during the fiscal year named.

"This direction given in express terms in the Act, was not followed, and it is difficult to say how the failure to pay the money in the manner and at the times provided should operate to defeat the plain and evident intent of the Legislature respecting these appropriations."

The said Act of 1904, Chapter 225, which for the first time created a state aided road fund, authorized and directed an appropriation of $200,000 annually *"or so much thereof as may be necessary"* for the purpose of carrying out the provisions of that statute.

The Act of 1910, which transferred the duties and powers of the Geological and Economic Survey to the State Roads Commission also transferred to that Commission the *unexpended balance* in the hands of the Geological and Economic Survey, and provided that the contracts made and the obligations created thereunder by the Geological and Economic Survey should be assumed by the Commission; and when the appropriation was increased from $200,000 to $300,000 we

find the same provision in that Act that is found in the original Act of 1904, that the amount so appropriated "*or so much thereof* as may be necessary" shall be expended for the purpose of carrying out the provisions of the Act.

The intention of the Legislature respecting the appropriation in the case before us is made clear by the language used, and there should be no difficulty in deciding the question presented.

It is clear that the Legislature intended that the entire amount of the appropriation should be expended, if it were found necessary, to carry out the provisions of the Act. Therefore to decide the question here presented we have only to ascertain whether the amount of the appropriation not actually paid out by the Commission at the close of the fiscal year 1915 was necessary for the accomplishment of the purposes named in the Act.

At the time the said sum of $200,797.39 was reverted to the Treasurey of the State there were outstanding obligations of the Commission, properly chargeable to this fund, amounting to $220,924.28, a part of which was then due and owing and the balance would become due and payable upon the completion of the work then in progress under said contracts.

It is thus shown that this unexpended balance was absolutely necessary for the purposes for which it was appropriated. The balance of the appropriation not actually paid to the Commission at or before the closing of the fiscal year, 1915, was not to revert, in so far as it was necessary to meet obligations properly chargeable to the fund appropriated. It appears that there were no statements on file in the office of the Comptroller, showing that said contracts against the appropriation had at such time been made, and that the Commission had created obligations thereunder for the payment of which this balance would be required, but there is no provision of law to which our attention has been called, or of which we have knowledge, requiring a statement of such character to be filed with the Comptroller to avoid the result

here complained of.   As seen above the unexpended balances for the five years immediately preceding the year 1915 had been carried to the credit of the State Roads Commission, and it is not shown that it had been the practice to require statements to be filed.

The clearly expressed intention of the Legislature that the entire appropriation should be expended, if found necessary, should not therefore be defeated because of the mere omission or failure on the part of the Commission to file, at the close of the fiscal year, a statement, showing the extent of their outstanding obligations at such time, although, to avoid a repetition of the difficulty here presented, we think that the Commission, at or near the end of each fiscal year, should, by written communication, inform the Comptroller of the status of such fund in respect to the unpaid obligations assumed by the Commission properly chargeable to said fund.

The aforesaid sum of $200,797.39, was as we have said necessary for the purposes of the statute and should not have been reverted to the General Treasury and it should now be restored to the credit of the Commission, and to do so it requires no legislative enactment.   Whether it was properly or improperly reverted is simply a question of law.

For the reasons above stated the order appealed from was affirmed by this Court in its *per curiam* order heretofore filed.