THOMPSON v. WILLIS et al.

No. 33130.    Feb. 14, 1950.
Rehearing Denied March 21, 1950.

215 P. 2d 850.

M. G. Roberts, of St. Louis, Mo., Satterfield & Franklin, of Oklahoma City, and Welch & Welch, of Madill, for plaintiff in error.

James C. Hamill, of Madill, and Reuel W. Little, of Oklahoma City, for defendants in error.

ARNOLD, V. C. J. This action was commenced September 20, 1946, in the district court of Marshall county, Oklahoma, by 67 plaintiffs, against Claude Allen, county treasurer of Marshall county, the board of county commissioners of that county, and 20 school districts in that county for the refund of certain money which was allegedly wrongfully collected from the plaintiffs as ad valorem taxes. On October 21, 1946, by leave of court, a petition in intervention in the nature of an answer to plaintiffs' petition was filed by Frank A. Thompson, Trustee, St. Louis-San-Francisco Railway Company, bankrupt. Trial of said action was commenced November 4, 1946, and during the progress of such trial, 41 of the plaintiffs dismissed their actions without prejudice. The trial court took under advisement intervener's demurrer to the evidence of plaintiffs until November 18, 1946, at which time the demurrer

was overruled and judgment awarded in favor of remaining plaintiffs and against the defendants for the total sum of $1,990.54. From this action and judgment of the trial court, intervener has brought the case here for review.

The gist of this action and defense may be best understood by quoting paragraphs 2 and 3 of plaintiffs' petition and paragraph 3 of intervener's answer as follows:

"That heretofore plaintiffs paid to the defendant Claude Allen, County Treasurer of Marshall County, Oklahoma, the sums of money set opposite their names, . . . . Said money was paid into a trust fund and a trust deposit was issued to these plaintiffs. The lands and property of these plaintiffs was being taken by the United States of America for use in impounding waters for the Denison Dam and reservoir, and by reason of its power of eminent domain some of the lands were taken by federal district court decrees and some by warranty deed conveyances. In issuing checks for the 'market value' or 'purported market value,' the officials of the United States erroneously made checks payable to these plaintiffs and to the defendant, Claude Allen, County Treasurer of Marshall County, Oklahoma. Plaintiffs were losing their lands and the defendant, Claude Allen, aforesaid treasurer, without authority of law and contrary to law took the above sums of money out of said checks. Said defendant placed the money in a trust account for the purpose and with the understanding it would be used only to pay taxes due from these plaintiffs to be paid to the said defendant, if any. Said lands were conveyed or taken by court decrees as aforesaid between January 1, 1942, and October 1, 1942, and in fact, no tax was due to be paid by these plaintiffs to the defendant, County Treasurer above.

"Notwithstanding the conditions of the trust deposit, the defendant, Claude Allen, contrary to law, took said money out of the trust fund and deposited the same to the credit of the other defendants herein. No notice of said action on the part of said defendant treasurer was

given and plaintiffs had no opportunity to file a protest to the distribution of said trust money."

" . . .

"Intervener admits that plaintiffs are taxpayers of Marshall County, Oklahoma and that the defendant Claude Allen, is the duly qualified and acting County Treasurer of Marshall County, Oklahoma. Intervener further admits that certain lands and property of the plaintiffs' were purchased by the United States of America for use in impounding waters for the Denison Dam and reservoir, and that it was necessary in certain instances to take such lands by reason of the power of eminent domain through a judgment in the Federal District Court. Intervener alleges in this connection that where the title was not obtained to such lands and paid for by the Government before the time for assessing the property for 1942 ad valorem taxes, the county attorney of Marshall County requested the County Treasurer to make a list of the estimated taxes against such lands for 1942, and such estimates were filed as claims in the condemnation cases in Federal Court, and the Federal Court ordered the Government to make the checks in payment for the respective tracts of lands to the land owners and the County Treasurer jointly, so that said treasurer might withhold the amount of estimated taxes and impound same until the taxes for such year were spread and certified for collection that they might be collected from the sellers of the land; that the amount of such claims for the estimated amount of the 1942 taxes, as well as certain other taxes lawfully due upon such properties, was withheld by said treasurer in the nature of trust deposits for the benefit of such sellers, and trust receipts were issued to the respective property owners or sellers, and the money was held in trust until the tax rolls for 1942 taxes were delivered to the treasurer for collection."

Intervener has made numerous assignments of error in his petition in error, but all of these are presented in the brief under a single question thus propounded:

"Are these plaintiffs in equitable action for the refund of moneys applied to the payment of 1942 ad valorem taxes entitled to recover judgments against the defendants for such refunds after the elapse of more than three years since such moneys were collected as taxes and disbursed and spent in various funds where such plaintiffs failed and neglected to take advantage of their statutory remedy for the refund of such taxes?"

This is in reality a companion case to the case of Allen, County Treasurer, v. Henshaw et al., decided by this court February 19, 1946, 197 Okla. 123, 168 P. 2d 625, which decision is relied upon by plaintiffs as controlling in the instant case. If the facts here disclosed were identical with those presented in that case there would be little difficulty in applying the law here as announced in that decision. However, there are two factual distinctions between that case and the instant case which are important to be considered. First, in that case the taxes involved were those to be levied for 1943 and the valuations there involved had not been equalized and determined nor the levies fixed when a large portion of the lands there involved had been acquired by the Federal Government, but in the instant case the valuations of the properties had been equalized and determined in 1941, that being the first year of the biennial assessment period. Second, in that case, protests were filed by the taxpayers against the collection of taxes on the lands conveyed to the Federal Government before tax liens had attached, while in the instant case no protests were filed at any time by these plaintiffs. Some of the lands here involved were conveyed by the owners to the Government by warranty deeds, while the remaining lands were acquired by the Government through condemnation proceedings. In the Allen case, supra, this court stated:

"The exercise of the right of eminent domain is in effect a compulsory sale of the owner's interest in the property sought to be appropriated."

This statement is now adhered to. However, we can discern no element

of compulsion or duress in the reasonable requirement of the Government that before final payment of the purchase money for lands conveyed by warranty deed or final payment of the compensation awarded in condemnation proceedings, it should be furnished with evidence that the title to the lands acquired is free of tax liens.

That this reasonable requirement of the Government was acquiesced in by the taxpayers is evidenced by a written stipulation entered into by plaintiffs through their attorneys with defendants through the county attorney before the intervener appeared in the action, said exhibit being introduced in evidence by plaintiff and the material portion of which is as follows:

"It is further stipulated and agreed that when the money set forth in plaintiffs' petition was paid to the defendant County Treasurer, it was with the understanding that it was for the purpose of paying any taxes that might be due from the plaintiffs, if and when ascertained. The plaintiffs simply deposited with the defendant, in advance, the monies set forth in plaintiffs 'petition which was to be used to pay any taxes which plaintiffs might be required by law to pay at a future date."

Plaintiffs had a plain, speedy, and adequate remedy at law for procuring and furnishing to the Government the evidence required by it that the titles to the lands were clear of tax liens by proceeding before the board of county commissioners as authorized by 68 O. S. 1941 §15.56. The language of that section, material to be considered here, reads:

"If, at any regular meeting of the said Boards, upon complaint of the person beneficially interested, his agent or attorney, it shall be made to appear by the testimony of the claimant and at least one reputable witness, borne out by the records of the county, . . . that property, whether real or personal, has been assessed in the county for the taxes of a year to which the same was not subject, the Board is hereby empowered to issue to the complainant a certificate of error showing that the complaint has been investigated by the said Board, and that the said Board has been satisfied of the truth of the allegations of said complaint and direct the same to the County Treasurer of their county, directing him to accept the said certificate as a payment of cash to the amount found by the said Board to have been unjustly assessed, which said amount shall be named in the said certificate, and shall by the Treasurer be credited upon his tax roll against the tax so found to be erroneous; and the Treasurer shall retain the said certificate and shall be credited with the same, as cash, in his settlement as such Treasurer."

The records of the county would have disclosed the existence of title to these lands in the Federal Government by the warranty deeds and decree of condemnation recorded in the county clerk's office. In the event of disallowance of the claim by the board of county commissioners, plaintiffs had a clear right of appeal to the district court under the provisions of 19 O. S. 1941 §431.

This remedy could have been sought and obtained before the 1942 taxes became a lien. When the tax rolls for that year were certified to the county treasurer December 1st, for collection, and he issued tax receipts and refund vouchers for the balance remaining in the trust deposits made by stipulation of the parties, and these receipts and refund vouchers were accepted and retained by the taxpayers without protest, as authorized by 68 O. S. 1941 §15.50, this manner of paying the taxes must be deemed to have been voluntary on the part of said taxpayers and such voluntary payment of taxes may not be recovered. Louisiana Realty Co. v. City of McAlester, 25 Okla. 726, 108 P. 391; Johnson v. Grady County, 50 Okla. 188, 150 P. 497. These statutory remedies of taxpayers are speedy, adequate, and exclusive. Black et al. v. Geissler et al., 58 Okla. 335, 159 P. 1124; Town of Burbank v. Sheel et al., 131 Okla. 292, 268 P. 1106; Cotton v. Blake, County Treasurer, 133 Okla. 60,

542

270 P. 1105; G. A. Nichols, Inc., v. Bonaparte, County Treasurer, et al., 176 Okla. 100, 54 P. 2d 1042.

The taxes thus paid for 1942 had been disbursed by the county treasurer, as required by law, to the county and its subdivisions more than three years before the commencement of this action in district court and have been applied by those municipalities to the payment of legal warrants and obligations for the payment of which the 1942 taxes were levied. The pleadings and the evidence in this case, in our opinion, distinguish this case from that of Allen, County Treasurer, v. Henshaw et al., supra, wherein this court said:

"The landowners involved here were done with the lien when the lands passed out of their hands prior to October 1, 1943. They made no agreement to pay the taxes for the ensuing fiscal year, and no personal obligation to pay the same could attach to them without such an agreement."

In the instant case there was an agreement on the part of the landowners, either express or implied, to furnish the federal government with evidence that these lands were clear of tax liens. They were not done with these liens until they had discharged their obligation to the Federal Government. They did nothing toward the performance of this agreement until more than three years had elapsed and until long after the taxes for that year had been legally disbursed by the county treasurer and used by the county and its municipal subdivisions in the payment of legal warrants and other obligations. Nothing appears here which appeals to a court of equity.

Judgment of the trial court is reversed and the cause is remanded for a new trial.

CORN, GIBSON, HALLEY, and JOHNSON, JJ., concur.