# GEORGE C. VOURNAS *v.* MONTGOMERY COUNTY, MARYLAND

[No. 260, September Term, 1982.]

*Decided December 7, 1982.*

244

The cause was argued before GILBERT, C. J., and LISS and ADKINS, JJ.

*Andrew R. Polott,* with whom was *William L. Farrar, Jr.* on the brief, for appellant.

*H. Christopher Malone, Assistant County Attorney for Montgomery County,* with whom were *Paul A. McGuckian, County Attorney for Montgomery County,* and *Robert G. Tobin, Jr., Deputy County Attorney for Montgomery County,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

This is an appeal from a declaratory judgment entered by the Circuit Court for Montgomery County, finding that the County farmland transfer tax imposed upon a transferor is due and payable by the transferor, an individual owner, on land previously assessed as farmland, upon transfer by condemnation of that land to the United States.

Appellant, George C. Vournas, owned 200.68 acres of land located at 15000 River Road, Potomac, Montgomery County, Maryland, designated as the Callithea Farm.

On October 7, 1975, the United States of America instituted a condemnation proceeding in the United States Dis-

trict Court for the District of Maryland to acquire 57.92 acres of Vournas' land for public use as part of the Chesapeake and Ohio Canal National Historical Park. In November of 1975, Montgomery County entered an appearance in the litigation to protect its interests regarding any taxes due on the property as of the day of taking, and to request that any such taxes be paid out of any money awarded to Vournas.

Subsequently, an award was made to Vournas in the amount of $591,300.00, of which $64,800.00 represented severance damages and $526,500.00 compensation for the value of the property. This award, dated January 25, 1979, was made subject to all liens, encumbrances, and charges against the land.

On March 15, 1979, the Clerk of the United States District Court in Baltimore received from the United States $591,300.00 in full satisfaction of the judgment. Title vested in the United States upon receipt of the money.

Thereafter, by order of the District Court dated April 3, 1979, the clerk of that court was directed to pay the $591,300.00 to the Commonwealth Title Insurance Company of Washington, D.C. to discharge all taxes, assessments, liens and encumbrances against the property and to remit the balance to the parties entitled to receive it.

On April 11, 1982, the documents evidencing the transaction were recorded in the land records of Montgomery County, Maryland. The record does not disclose the settlement sheets, if any, prepared by the title company when it disbursed the funds. However, all parties agree that no transfer tax was retained or paid to Montgomery County prior to the recording of the conveyancing documents, nor has any such tax been paid to the County since. On May 22, 1979, Montgomery County, pursuant to the provisions of Section 52-17 through 52-27, of the Montgomery County Code, sent a bill to Vournas in the amount of $35,478.00, representing the farmland transfer tax alleged to be due on the conveyance to the United States of the 57.92 acres of Vournas' farm as described above. The tax was computed on the consideration of $591,300.00. A revised bill was sent by

the County on December 17, 1979, reducing the tax base by the amount of the severance damages ($64,800.00) and recomputing the tax at $31,590.00 plus interest from June 22, 1979 to December 31, 1979 of $1,474.20 for a total of $33,064.20. To date the plaintiff has not paid any monies on account of the transfer tax, but instead instituted this litigation on June 20, 1980, asserting that he is not liable for the tax.

By Chapter 633 of the Laws of Maryland 1968, (codified at Section 52-20 of the Montgomery County Code), the General Assembly specifically authorized the County to levy and impose a tax at six percent of the value of the consideration on the transfer of certain farmland and land rezoned to a more intensive use, and one percent on all other transfers. By county law this tax is fixed at varying percentages under differing circumstances to and including six percent. Appellant's land is taxable at the top rate [Montgomery County Code Section 52-21 (d) (4)]. By this same law [Section 52-21 (d)] the tax is to be paid by the transferor, and by definition in Section 52-19 a transfer includes acts by the parties or by law through which title to property is conveyed from one person to another. Sections 52-22 and 23 provide that the tax is to be paid at the time of recording the instrument of conveyance in the land records of Montgomery County. Conveyances are not to be accepted for recording unless the tax has been paid and the official stamp of the County Director of Finance affixed.

The trial court held that Sections 52-19, 52-20, 52-21, 52-22, Montgomery County Code, (1972, 1977 Repl. Vol.) are constitutional, valid and enforceable and granted a judgment in favor of Montgomery County. Vournas appealed, raising the following issues:

I. Whether the transfer tax authorized by Chapter 633 of the laws of Maryland 1968 and imposed by Section 52-21 of the Montgomery County Code (1972, 1977 Repl. Vol.) is illegal, unconstitutional and void?

II. Whether the transfer tax is applicable to an involuntary conversion of property by reason of condemnation proceedings instituted by the United States Government?

III. Whether the appellee is precluded from collecting the transfer tax because of its failure to secure payment out of the condemnation award at or before recording of the transfer on the land records of Montgomery County?

## I.

Appellant initially complains that the Maryland Legislature had no rational basis for enacting an enabling act permitting imposition of a six percent property transfer tax only in Montgomery County, see 1968 Md. Laws, Chapter 633. He argues that the tax violates the Fourteenth Amendment to the United States Constitution which guarantees equal protection of the laws, as there is nothing unusual about the cost of recording deeds or transferring agricultural property in Montgomery County, as opposed to agricultural property in other Maryland counties, which should single out such deeds or property for a six percent transfer tax when most other property transferred in the State of Maryland and in Montgomery County is subject to substantially lower rates. He further argues that geographical restrictions upon the application of a law are required to have some rational basis. See Dasch v. Jackson, 170 Md. 251 (1936).

The equal protection clause of the Fourteenth Amendment does not require absolute mathematical equality in regard to taxation. In Lane Construction Corporation v. Comptroller of the Treasury, 228 Md. 90 (1962), the Court of Appeals said:

[I]t [the equal protection clause] permits great "flexibility and variety that are appropriate to reasonable schemes of state taxation" as long as a classification is not per se or in practical operation

palpably arbitrary. *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 526, 3 L.Ed.2d 480. "[T]he presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive demonstration against particular persons and classes." *Madden v. Kentucky,* 309 U.S. 83, 88, 84 L.Ed. 590. If on any imaginable factual basis, the state legislature had a reason to distinguish between certain transactions, and thus to tax them somewhat differently, the classification will be upheld. *Allied American Co. v. Comm'r,* 219 Md. 607, 623. [228 Md. at 97].

Only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes can the presumption of constitutionality be rebutted. *Hooks v. Comptroller of the Treasury,* 265 Md. 380, 388 (1972). The fact that in a particular instance the effect of the tax imposed may be to treat certain transactions or taxpayers differently, absent a showing that it is without reasonable basis and is entirely arbitrary, does not amount to such a discriminatory classification as to be violative of constitutional guarantees. *Id.* at 388-89. The Court of Appeals clearly stated this rule in *Villa Nova Night Club v. Comptroller of the Treasury,* 256 Md. 381, at 391 (1970):

> The point is that the Legislature, when it passes a revenue measure, has the power to classify, and may impose varying tax burdens on different groups. It is only when the attempted classification has no reasonable basis in the nature of the businesses classified and burdens are imposed unequally on taxpayers between whom there is no real difference that the courts will interfere.

In 1968, the General Assembly authorized the County Council to impose a transfer tax on any transfer of land which had been assessed as farmland. The Legislature has absolute power of taxation over all property within the

State, except as restricted by the United States Constitution and the Maryland Constitution. *McLane v. State Tax Commission,* 156 Md. 133, 140 (1928).

The transfer tax is imposed at the time of sale and transfer of property and is based on the consideration for the sale. The rationale for the tax is that at the time of transfer of farm assessed land the County seeks to recapture part of the revenue lost during the time the land received a lower preferential farmland assessment. *Rapley v. Montgomery County,* 261 Md. 98, 100 (1971). During the time the land is actively devoted to farm or agricultural use, the land is assessed as farmland, and the owner, whether an actual farmer or a developer farming for tax relief, is free to farm forever. The transfer tax in effect could be said to encourage farming and discourage transfer. Only upon the sale or transfer of farm assessed land is the transfer tax required to be paid. When an owner sells land assessed as farmland the owner realizes the increase in the monetary value of the land. The transfer tax seeks only to recoup a portion of the value of the farm assessed land, not reached through ordinary real property taxation because of the low farm assessment.

In this case, appellant sold and transferred land which had been assessed and taxed at only $30 to $220 per acre, to the United States for $9,100 per acre. The transfer tax is admittedly a revenue measure. Where the primary objective of a tax is raising revenue, it is a revenue measure and the amount of the tax is not reviewable by the courts. *Maryland Theatrical Corp. v. Brennan,* 180 Md. 377, 381 (1942). Appellant, who has the onerous burden of showing that the classification does not rest upon any reasonable basis, has failed to establish any invidious discrimination in the application of the transfer tax either to himself or to others. *See Allied American Mut. Fire Ins. Co. v. Commissioner of Motor Vehicles,* 219 Md. 607, 623 (1959).

The tax imposed upon the transfer of real property is an excise tax and not a property tax, *Rapley v. Montgomery County, supra* at 110, which is imposed upon the privilege of

recording a deed or other instrument. *Pittman v. Housing Authority of Baltimore City,* 180 Md. 457, 463 (1942). The transfer tax is similar to a sales tax in that it is imposed upon the occurrence of an event. *Central Credit Union v. Comptroller of the Treasury,* 243 Md. 175, 182-83 (1966).

The County transfer tax, as an excise tax, is not subject to the equality and uniformity requirements of Article 15 of the Maryland Declaration of Rights. *Weaver v. Prince George's County,* 281 Md. 349 (1977). We find the transfer tax to be constitutional in all respects.

## II.

Appellant contends that the farmland transfer tax is not applicable to a federal condemnation proceeding, and is violative of the federal system created by the United States Constitution. *McCulloch v. Maryland,* 4 Wheat. 316, 425-37 (1819). He suggests that the transfer tax levied against the condemnee amounts to an impermissible indirect restraint on the federal government. *See Pittman v. Home Owners Loan Corp. of Washington, D.C.,* 175 Md. 512, *aff'd,* 308 U.S. 21 (1939).

Prior to 1971, federal condemnation proceedings had long been held to be activities and operations the federal government undertakes in its sovereign capacity. As such, State or local attempts to restrain, diminish or condition the exercise of condemnation by the United States were considered to be invalid. *See Kohl v. United States,* 91 U.S. 367, 371-72 (1875).

Effective January 1, 1971, Title 42, Section 4653 of the United States Code provides for a waiver of immunity with respect to the imposition of the transfer tax on a transferor in a transfer by condemnation. The transfer in this case occurred in 1979. Therefore, under appellant's theory, immunity was waived for this transfer, even assuming, *arguendo,* that the legal incidence had been on the United States. However, the County has not imposed the transfer tax on the United States.

In this case Vournas is furnishing land needed by the United States. The legal incidence of the transfer tax is upon Vournas, not the United States. Even if the economic burden by contract or otherwise, might somehow fall on the United States, the tax is nevertheless valid.

The United States Constitution immunizes the United States and its property from taxation by the States, but it does not forbid a tax whose legal incidence is upon a person doing business with the United States, even though the economic burden of the tax, by contract or otherwise, is ultimately borne by the United States. *United States v. New Mexico,* 102 S.Ct. 1373, 1382 (1982).

Federal Courts have found that taxes on lessees and users of tax exempt government property are constitutional, *Chrysler Corp. v. Township of Sterling,* 410 F.2d 62, 72 (6th Cir. 1969), even when imposed on a person's beneficial interest in Government property though the tax is measured by the value of the property, *International Paper Co. v. County of Siskiyou,* 515 F.2d 285 (9th Cir. 1974), and which are on a leasehold interest in property leased from the United States. *Miller v. Bauer,* 517 F.2d 27 (7th Cir. 1975).

In Maryland, the U.S. District Court held that the legal incidence of Maryland's environmental surcharge was on utility companies and not the federal government, and that the tax was valid and constitutional. *United States v. State of Maryland,* 471 F.Supp. 1030 (D.Md. 1979).

The Maryland Court of Appeals has ruled that the lessee of land from the United States was subject to property taxes. *Meade Heights, Inc. v. State Tax Comm.,* 202 Md. 20 (1958). In *Dry Dock Co. v. Baltimore City,* 97 Md. 97, 103 (1903), the Court held that land conveyed by the United States for a dock with the right of perpetual use, and possibility of reverter to the United States was subject to tax. The Supreme Court affirmed in *Baltimore Shipbuilding Co. v. Baltimore,* 195 U.S. 375 (1904), holding that the land was not exempt from taxation.

In a condemnation proceeding, the United States, pursuant to its sovereign powers of eminent domain, *takes*

private property for public use. The United States is not in this case permitting appellant to lease, buy or use its property for private or commercial purposes. Although the government provides compensation to the owner of condemned property, a condemnation proceeding is, unlike the situations in the cases cited above, an official sovereign proceeding not available to members of the general public. 1 *Nichols on Eminent Domain,* Section 1.13 (9) (3d Ed. 1981).

The exercise of the right of condemnation by the United States results in a sale of the owner's interest in the property, albeit, a forced sale. *Thompson v. Willis,* 215 P.2d 850, 853 (Okla. 1950). The government in a condemnation attains the status of a *bona fide* purchaser for value, *Langston v. City of Miami Beach,* 242 So.2d 481, 483 (Fla. App. 1971), and stands toward the owner of the property as a buyer toward a seller. *Jackson v. State,* 106 N.E. 758 (N.Y. 1914). Appellant was a person selling his property to the United States.

The County transfer tax is similar to a sales tax. *Central Credit Corp. v. Comptroller of Treasury, supra.* The courts have consistently held that sales taxes on persons doing business with the United States are constitutional. *U.S. v. Boyd,* 378 U.S. 39 (1964); *Alabama v. King & Boozer,* 314 U.S. 1.

There is no statute applicable in this case which exempts this transfer from the County farmland transfer tax, and payment of the tax is not demanded from the United States. In fact, Title 42, Section 4653, United States Code provides that the transfer tax is an expense incidental to the transfer of title to the United States, and may be reimbursable by the United States.

The argument that because the transfer herein is by way of condemnation, and therefore involuntary, no tax may be imposed is unavailing. By Section 52-19 of the Montgomery County Code a transfer is decreed to mean:

> The acts of the parties, or of the law, by which the title to property or a leasehold interest in property is conveyed from one person to another.

A condemnation decree which transfers title from a land owner to a governmental agency, is a transfer by law, albeit involuntary. There is no exemption in the taxing statutes for transfer by condemnation to the United States. The only exemptions are for certain nonprofit organizations and for municipal, county or State *governments providing the transferor is likewise such an entity.* [Emphasis added.] Section 52-24 Montgomery County Code provides:

Certain transfers exempt from tax.

No transfer of any interest in such property shall be taxed hereunder where the transfer is to any nonprofit hospital or nonprofit religious or charitable organization, association or corporation, nor to any municipal, county or state government, or instrumentalities, agencies or political subdivisions thereof. Provided, however, no exemption shall be granted hereunder to a transferor under section 52-21(d) [the provision applicable to farmland] unless the *transferor* be a nonprofit hospital or nonprofit religious or charitable organization, association or corporation, or a municipal, county or state government or instrumentality, agency or political subdivision thereof. [Emphasis added.]

The argument that the United States is not a person within the meaning of Section 52-19 of the Montgomery County Code is not controlling since it is the status of the transferor which controls in this case. Appellant, as a transferor, fits none of the enumerated classes within the applicable provision for exemption, and therefore cannot claim an exemption under the County statute. We find no error in the trial court's ruling that the Montgomery County farmland transfer tax is applicable to an involuntary transfer by way of condemnation to a government agency.

### III.

Appellant asserts that since the tax claimed was not collected by the County out of the proceeds of the condemna-

tion award, because of apparent lapses or procedural oversights, the County has waived or is estopped from asserting its right to collect.

Whether or not the tax is a lien or charge against the property does not relieve the transferor from paying it either personally or by deduction from the proceeds he has received.

The property can be and was conveyed free of liens, taxes, encumbrance or charges, even though for some reason the transfer tax was overlooked and remained unpaid after conveyance.

The District Court's order of April 3, 1979 was not ignored or disobeyed. Any oversight was in the failure of the title company to withhold the payment or in the acceptance and recording of the conveyance in the clerk's office without the County Finance Office stamp certifying payment.

Despite these lapses, the transferor remains liable since the obligation to pay is expressly imposed on him by law under Section 52-21 (d) of the Montgomery County Code. In addition, appellant may still have an adequate remedy for recovery of the tax he is required to pay. Title 42, Section 4653 of the United States Code provides:

> The head of a Federal Agency, as soon as practicable after the date of payment of the purchase price or the date of deposit in court of funds to satisfy the award of compensation in a condemnation proceeding to acquire real property, whichever is the earlier, shall reimburse the owner, to the extent the head of such agency deems fair and reasonable, for expenses he necessarily incurred for
>
> > (1) recording fees, transfer taxes, and similar expenses incidental to conveying such real property to the United States; . . .

Section 4653 provides for federal reimbursement to a transferor in a federal condemnation proceeding of "expenses *incidental* to conveying such real property to the United States" including transfer taxes. [Emphasis added.]

Although *collection* of the tax was inadvertently overlooked at the time of transfer, the tax *obligation* is expressly imposed by law to transactions such as that between Vournas and the United States.

In November, 1975, Montgomery County appeared in the condemnation proceeding to "collect any and all County and State taxes which are due on the Property as of the date of taking."

The County sought to collect "any and all taxes due as of the date of taking." It was only by some mischance that the transfer tax was not deducted from the condemnation award.

Appellant has received the compensation award from which the transfer tax should have been paid. Since the tax has not been paid, appellant, as the transferor, is personally responsible for the payment of the tax.

Appellant claims that Montgomery County cannot collect the farmland transfer tax in this case because its collection scheme has not been properly exercised. When a tax statute provides a scheme for tax collection the taxing authority is limited to collecting the tax according to that scheme. *See Hannis Distilling Co. v. Mayor and City Council of Baltimore,* 114 Md. 678 (1911). This issue was not raised, tried or decided by the trial court. Therefore, the issue is not before this Court. Maryland Rule 1085.

In any event, an action at law lies to enforce the collection of a tax. *American Coal Co. v. Allegheny Co. Comm'rs,* 59 Md. 185, 197 (1882). An action of assumpsit lies for the collection of a tax where the statute imposing the tax does not provide a complete means for enforcing collection. *Mayor and City Council of Baltimore v. Howard,* 6 Harr. & J., 383, 394 (1825). This is based on the principle that where the law gives a claim to one person against another, there is raised an implied assumpsit on the legal obligation to pay. *Mayor and City Council of Baltimore v. Howard, supra* at 394. The fact that the transfer documents were recorded without the payment of the transfer tax does not relieve the appellant of his obligation for the tax. He had been notified that the tax was due by letters from Montgomery County dated May 22,

1979 and December 17, 1979. Notwithstanding the failure of the collection scheme (although through inadvertence) neither appellant's obligation to pay the transfer tax nor the right of Montgomery County to seek and enforce payment is extinguished.

*Judgment affirmed.*
*Costs to be paid by appellant.*