469 A.2d 907

MARYLAND NATIONAL BANK

v.

STATE DEPARTMENT OF ASSESSMENTS
AND TAXATION.

MARYLAND NATIONAL INDUSTRIAL FINANCE
CORPORATION

v.

STATE DEPARTMENT OF ASSESSMENTS
AND TAXATION.

Nos. 446, 447, Sept. Term, 1983.

Court of Special Appeals of Maryland.

Jan. 12, 1984.

Certiorari Denied May 28, 1984.

Herman B. Rosenthal, with whom were George D. Hubbard and Semmes, Bowen & Semmes, Baltimore, on brief, for appellants.

Kaye Brooks Bushel, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen. and T. Scott Basik, Asst. Atty. Gen., on brief, for appellee.

Argued before MOYLAN, LOWE and GARRITY, JJ.

LOWE, Judge.

" 'When I use a word,' Humpty-Dumpty said, in rather a scornful tone, 'it means just what I choose it to mean—neither more nor less.' " [1]

Generally speaking, the term "taxable income" (for purposes of measuring the federal income tax) excludes from a taxpayer's gross income any state "income taxes" which the taxpayer has paid during the taxable year. In 1969, Maryland imposed a "franchise tax" [2] upon its financial institutions which was measured by their "net income" [3]. It defined the latter term as the institution's federally "taxable income" [4] but required that any "income taxes" imposed by the State be added back to federal "taxable income". [5]

Perhaps anticipating a refund claim by the institutions which had added the federally deductible State franchise tax (measured on income) to their taxable income when determining the net income upon which the tax was imposed, the General Assembly in 1977 amended the statute "[f]or the purpose of clarifying the amounts which must be added to the federal taxable income of a corporate taxpayer . . . ." [6].

---

1. Lewis Carroll, Through the Looking Glass, Ch. 6.

2. Md.Ann.Code, Art. 81, § 128A.

3. *Id.,* § 128A(b).

4. *Id.,* § 280A(a).

5. *Id.,* § 280A(b)(1).

6. Laws of Md., 1977, Ch. 759.

It clarified that the "income taxes" it had required to be added back to the federally taxable income (upon which the 7% franchise tax was imposed) meant State "taxes based upon income".

The rationale for saying that "income taxes" had meant upon enactment just what it (the Legislature) had chosen it to mean, was apparent from the legislative purpose in its enactment,[7] the plural use of the term in the statute,[8] and the "unvarying construction" given to the statute by the agency charged with its enforcement for its fourteen year life.[9] When contemplating what type of tax to impose upon financial institutions in 1968, the Legislature had before it the Report of the Joint Legislative-Executive Committee to Study Taxation and Fiscal Problems. In its observations, the Committee pointed out that if the normal corporate income tax were imposed upon financial institutions, the bulk of their income would not be taxable because it was derived from interest and dividends from federal treasury obligations, which income was not subject to a direct state *income* tax due to a peculiar phraseology in 12 U.S.C.A. § 548; but that source of income could be taxed by charging a state franchise tax.

Realizing that a rose by another name may even smell sweeter, the State "imposed" its 7% tax on the franchise of the financial institution's "net earnings", Art. 81, § 128A(b), *i.e.,* its income. Thus, it was able to tax the otherwise exempt income from the institution's treasury obligations. The State then defined the "net income" measure of the "franchise tax" as including the "taxable income of [the] taxpayer as defined in the laws of the United States . . . ." Art. 81, § 280A(a). The laws of the United States permitted an exemption for the "franchise tax" imposed by the

---

**7.** *Armco Steel v. State Tax Comm.,* 221 Md. 33, 155 A.2d 678 (1959).

**8.** *Rogan v. B. & O.R.R. Co.,* 188 Md. 44, 53, 52 A.2d 261 (1947).

**9.** *St. Dep't of A. & T. v. Greyhound Comp.,* 271 Md. 575, 589–590, 320 A.2d 40 (1974).

State which was measured by the institution's income so the State required that:

> "There shall be added to the taxable income of such taxpayer: ... (1) income taxes ... imposed by the State of Maryland ...." Art. 81, § 280A(b).

For fourteen years the appellee, State Department of Assessments and Taxation, has considered the franchise tax on financial institutions which is measured by their income as one of the "income taxes ... imposed by the State of Maryland." When the Legislature clarified that purposed intent in 1977, the appellant Maryland National Bank perceived it as a sign of semantic weakness. It filed for refunds from Maryland of the tax it had paid Maryland on the "franchise tax" which it had added back to its federal taxable income pursuant to § 280A(b)(1) in order to calculate its taxable income. It reasoned that because the statute had been changed, the bank had been wrong prior to 1977 when it had treated the franchise tax over the years as one of the "income taxes" to be added back to the federal taxable income for purposes of computing its State liability. The 1977 amendment, it contended, was a forced interpretation necessitated by the formerly clear use of the term "income taxes". It argued to the State Tax Court and to the Circuit Court for Baltimore City that the use of the term "income taxes" was not even sufficiently ambiguous to permit resort to judicial guides for interpreting statutes or to ascertain legislative intent and that the State prior to 1977 had improperly directed that the franchise tax was an income tax to be added back to the federal taxable income (which had exempted it) as the net earnings to be taxed by Maryland.

The courts below did not agree and chose to seek the intent of the Legislature from the statute's purpose and from its application. We, on the other hand, agree that it is and was unambiguous. We agree with the Legislature that the term meant just what it intended it to mean. It is significant, we think, that the plural use of the term "income taxes" which were to be added to the federally com-

puted taxable income was used in a generic sense to include any taxes based on "income" imposed by the State. It is beyond our comprehension how appellant can logically contend that the broad plural use of the term meant a narrow singular specific tax. Had the Legislature intended that only "the" income "tax" was intended, it certainly would have interposed that article, "the", or even "an", to so specify. To the contrary, however, it used the plural "income taxes" which unambiguously comprehends any "taxes based on income" and as Humpty Dumpty added to Alice, "neither more nor less".

While we hold that the term unambiguously means what the enforcement agency said it meant without contradiction for fourteen years, *Comptroller v. Rockhill, Inc.,* 205 Md. 226, 107 A.2d 93 (1954), and what the Legislature itself verified by repetition that it had always intended, if it was not as clear as we have all perceived it, certainly it was not as unambiguous as the appellant would have us believe. The most the Bank could achieve from its own resort to legislative history is to indicate a possible ambiguity; but even then it clearly loses by its own quotation from the 1968 Joint Committee Report which shows the intent to include as much income as possible on which the tax would be measured.

We agree that the Legislature recognized the difference between "the franchise tax and the income tax". We also think the Legislature knew that a franchise tax when measured on income is one of many "income taxes". To adopt the Bank's interpretation would permit the Bank a deduction for Maryland franchise tax purposes of the franchise tax to be paid. That would permit the absurd result of the Legislature having imposed a tax which it did not intend to collect. *Kolb v. Burkhardt,* 148 Md. 539, 129 A. 670 (1925). It is perhaps for that reason that the General Assembly in 1977 "said, in rather a scornful tone", it had intended nothing of the kind in 1969.

**274**

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANTS.