500 A.2d 302

**MONTGOMERY COUNTY, Maryland**

v.

**McKendree FULKS, et al.**

**No. 311, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Nov. 14, 1985.

H. Christopher Malone, Sr. Asst. County Atty. (Paul A. McGuckian, County Atty. and Robert G. Tobin, Jr., Deputy County Atty., on the brief), Rockville, for appellant.

Floyd Willis, III (Stephen J. Savage on the brief), Rockville, for appellees.

Argued before GARRITY, ADKINS and KARWACKI, JJ.

ADKINS, Judge.

This is Round Two of a fight that first appeared before us in the September 1983 Term. In 1981, the appellees, McKendree and Mildred Fulks, transferred about 33 acres of land to Kettler Brothers, Inc., for $335,950. Pursuant to Montgomery County Code § 52–21(e), the Fulkses paid a 6 percent Montgomery County rezoning transfer tax on the transaction; but, due to a mix-up, the county did not at-

tempt to collect the 2 percent State agricultural transfer tax imposed by Md.Ann.Code, Art. 81, § 278F.

In 1982, appellant Montgomery County, Maryland, sued appellees in the circuit court for that county. Montgomery County filed the action as the collector of the 2 percent State agricultural transfer tax. Its goal was to recover that tax from Mr. and Mrs. Fulks. The appellees defended on the ground that § 278F(j) imposes a 6 percent ceiling on aggregate State and local transfer taxes that arise from a single transaction. Because they had already paid a county transfer tax of 6 percent, they argued that they owed nothing further. Two other parties, Smart Ltd. and Route Limited Partnership, were permitted to intervene in the action, both as defendants and as counterclaimants. In the latter capacity, the intervenors sought to recover local rezoning transfer taxes they had paid under protest.

When this case went before Circuit Court Judge Cave the first time, the court found for the principal defendants, holding that the Montgomery County rezoning transfer tax was subject to the 6 percent cap of § 278F(j). This court dismissed the appellant's subsequent appeal because the intervenors' counterclaim was not disposed of; hence, a final judgment in the case was never rendered. *Montgomery County v. Fulks,* No. 1132, Sept.Term, 1983 (unreported; filed June 19, 1984).

On January 30, 1985, the circuit court entered a final order in which it vacated the order permitting Smart Ltd. and Route Limited Partnership to intervene, granted the appellees' request for summary judgment, and ordered that the 6 percent rezoning transfer tax be offset against the 2 percent State "agricultural transfer tax" under § 278F(j).

Whether the Montgomery County *rezoning* transfer tax is subject to the 6 percent cap imposed by § 278F(j) as the circuit court found, or whether § 278F(j) places a ceiling only on the county *agricultural* transfer tax is the principal question presented to us. We conclude that the circuit court correctly construed § 278F(j).

As prelude to a discussion of this tax ceiling issue, however, we consider appellees' contention that this appeal is barred by collateral estoppel.

## Collateral Estoppel

The appellees argue that our decision in *Montgomery County v. Johnston*, No. 1486, Sept.Term, 1983 (filed June 19, 1984) bars this appeal by the doctrine of collateral estoppel.[1] *Johnston* involved a now-repealed statute, but a legal issue virtually identical to the principal issue in this case. Appellant says that Md.Rule 1085 invalidates appellees' argument and we agree.

■ *Johnston* was filed on June 19, 1984, the same date on which our first *Fulks* was filed. The judgment now on appeal was not entered until January 30, 1985. During that interval of over seven months, no issue of collateral estoppel was raised below and, obviously, the issue was not decided below. As a general principle, Rule 1085 bars raising the issue of collateral estoppel for the first time on appeal. *Huester v. Clements*, 252 Md. 641, 250 A.2d 855 (1969); *City of Frederick v. Quinn*, 35 Md.App. 626, 371 A.2d 724 (1977). We see no reason not to apply that principle here.

## Tax Ceiling

To place the tax ceiling issue in context, it is necessary to outline certain State and local tax statutes and to explain the status of the appellees vis a vis those statutes.

## The Tax Statutes

By Chapter 633, Laws of 1968, the General Assembly authorized the county council for Montgomery County "to levy and impose ... a tax to be paid and collected on the transfer ... of any fee simple interest in real property...."

---

1. An unreported opinion may be cited for purposes of collateral estoppel. Md.Rule 1092(c).

Montgomery County Code (1977 Repl.Vol.) § 52–20(a). This transfer tax may not exceed "[s]ix percent of the ... consideration for any transfer of land ... which, while owned by the transferor, has been assessed at any time during the five years preceding transfer on the basis of being actively devoted to farm or agricultural use." § 52–20(a)(1). Nor may it exceed "[s]ix percent of the ... consideration for any transfer of real property which, after the effective date of any such rate of tax has been rezoned to a more intensive use...." § 52–20(a)(2). *See Vournas v. Montgomery County,* 53 Md.App. 243, 246, 452 A.2d 1263 (1982), *aff'd,* 300 Md. 123, 476 A.2d 705 (1984).

Section 52–21 of the county code levies the transfer tax. Subsection (d) implements § 52–20(a)(1) by providing for a tax ranging from 2½ percent to 6 percent on the transfer of agricultural property. Subsection (e) implements § 52–20(a)(2) by providing for a tax of 6 percent on the transfer of rezoned property. If a transfer is taxable under both subsections (d) and (e) of § 52–21, only the subsection (e) (rezoning) rate is collectible. Section 52–21(d)(4).

It is the interplay between these county laws and Art. 81, § 278F that produces the problem in this case. Section 278F was enacted by Ch. 808, Laws of 1981, entitled "agricultural Transfer Tax" and declared to be "FOR the purpose of repealing the agricultural development tax; imposing a tax on the transfer of agricultural land under certain circumstances; ... [and] providing certain restrictions on local agricultural transfer taxes...." The section establishes "an agricultural transfer tax ... on every written instrument conveying title to real property" subject to exceptions not relevant here. Section 278F(a). The maximum rate of tax is 5 percent of the consideration paid for the transfer for land (20 acres or more) assessed for agricultural use and 4 percent of the consideration for land (less than 20 acres) assessed on the basis of its agricultural use or on the basis of unimproved land. "The full tax ... shall be reduced by 25 percent for each consecutive year in which real property taxes were paid on the basis of a nonagri-

cultural use assessment." Section 278F(b). At the heart of the instant controversy, however, is § 278F(j) which provides in pertinent part:

A county may not impose a local transfer tax on the transfer of land subject to the provisions of this section at a rate that is greater than the local transfer tax applicable to improved residential property in that county.... A county may not impose a local transfer tax to a rate, or increase a local transfer tax to a rate, above the rate imposed as of July 1, 1979, on any land subject to the provisions of this section. *Furthermore, in any county that has imposed a transfer tax at a rate in excess of the rate of transfer tax levied on improved residential property, the combination of the state and local transfer tax rates may not exceed 5 percent plus the rate applicable to improved residential property.*[2] *If the combined rates exceed the maximum allowable rate, the tax imposed by this section shall be collected in full, and the local tax shall be reduced as required* [emphasis supplied].

### Upon What Does § 278F(j) Impose a Ceiling?

The parties agree that on the facts of this case, § 278F(j) imposes a 6 percent ceiling on local transfer taxes. They disagree on whether that ceiling applies to the total local tax imposed on a transfer of property or only to the agricultural land portion of such a tax. If Montgomery County is right in its argument that the latter construction is correct, then the Fulkses owe the full State agricultural tax and must pay this in addition to the local transfer tax they have already paid. If the opposite construction of § 278F(j) is correct, then the Fulkses owe the State tax but since their total transfer taxes may not exceed 6 percent, the amount collected from them by Montgomery County

---

**2.** In Montgomery County, 1 percent on transfers where value of consideration is $35,500 or more. County Code § 52–21(c).

should be reduced by 2 percent—the amount of the State tax.

The issue before us, then, is one of statutory construction. "The cardinal rule of statutory construction is to ascertain and effectuate the actual intent of the Legislature." *Howard County Ass'n For Retarded Citizens v. Walls*, 288 Md. 526, 530, 418 A.2d 1210 (1980). That intent is normally to be sought from the language of the statute itself. *Pineland Lumber Co. v. Miles*, 228 Md. 584, 587–88, 180 A.2d 870 (1962). If that language "is plain and free of ambiguity and has a definite and sensible meaning, such is conclusively presumed to be the meaning of the legislature in enacting the statute." *State v. Preissman*, 22 Md.App. 454, 459, 323 A.2d 637, *cert. den.*, 272 Md. 747 (1974). It is only where the statutory language is ambiguous or of doubtful meaning that we venture beyond that language to consider such extrinsic aids to construction as legislative history, *Bledsoe v. Bledsoe*, 294 Md. 183, 189, 448 A.2d 353 (1982), the relationship between various portions of a statute and the purpose to be accomplished by the statute, *Scott v. State*, 297 Md. 235, 245–46, 465 A.2d 1126 (1983), long-standing administrative interpretations, *Holy Cross Hospital v. Health Services Cost Review Comm.*, 283 Md. 677, 684, 393 A.2d 181 (1978), and the like.

Maryland courts should be cautious in this area and avoid creating ambiguity where none exists. *See Hunt v. Montgomery County*, 248 Md. 403, 237 A.2d 35 (1968). Also courts should be wary of inserting words with a view toward making the statute express an intention which is different from its plain meaning. *Gatewood v. State*, 244 Md. 609, 224 A.2d 677 (1966).

The case before us involves a tax issue, and in tax matters in particular, Maryland courts often have been strict constructionists, relying heavily on the plain meaning of the words. They have also tended to favor the interpretation proffered by the taxpayer when the meaning of the statute is in doubt.

As the Court of Appeals stated in *Scoville Service, Inc. v. Comptroller of the Treasury*, 269 Md. 390, 306 A.2d 534 (1973):

> In interpreting a tax statute, we may not extend its provisions by implication beyond the clear import of the language employed; and even where there is doubt as to the scope of the statute, although we find none here, it should be construed most strongly in favor of the citizen and against the state.

*Scoville Service*, 269 Md. at 396, 306 A.2d 534 (citations omitted).

Two tax cases deserve special mention. In *Maryland National Bank v. State Department of Assessments and Taxation*, 57 Md.App. 269, 469 A.2d 907, *cert. den.*, 299 Md. 656, 474 A.2d 1344 (1984), this court interpreted the words "income taxes." This court found that the plural use of the term compelled the determination that it included any taxes based on income imposed by the State. "Had the legislature intended that only 'the' income 'tax' was intended, it certainly would have interposed that article, 'the,' or even 'an,' to so specify." *Maryland National Bank*, 57 Md.App. at 273, 469 A.2d 907.

Also, in *Atlantic, Gulf and Pacific Company v. State Department of Assessments and Taxation*, 252 Md. 173, 249 A.2d 180 (1969), the court refused to narrow the scope of a tax exemption for aircraft engaged in commerce by tacking restrictive language onto the word "aircraft." "The General Assembly could have added these words," the court stated, "but the plain fact is that it chose not to add such qualifying language." *Atlantic*, 252 Md. at 181, 249 A.2d 180.

In support of its position, Montgomery County asserts that the phrases "local transfer tax," "local transfer tax rates," and "local tax" are ambiguous as used in Art. 81, § 278F(j). It then offers a melange of legislative history and other aids to construction to demonstrate that those phrases should really read "local *agricultural* transfer

tax," "local *agricultural* transfer tax rates," and "local *agricultural* tax." As the authorities cited in the previous paragraphs teach, however, before we resort to extrinsic aids to construction we must first find that the language in question is ambiguous.

To persuade us to that conclusion, the county points out that "in determining the meaning of a particular provision or section, even where its language appears to be clear and unambiguous, it is necessary to examine that provision or section in context." *Scott v. State*, 297 Md. at 245, 465 A.2d 1126. It then notes that the title to Ch. 808, Laws of 1981 (the Act that adopted § 278F) states that one purpose of the Act is "providing certain restrictions on local agricultural transfer taxes." Additionally, the county directs our attention to subsections (h) and (i). The former provides that "[t]wo-thirds of the money collected by the tax collecting authorities of the various subdivisions, and in Montgomery County one-third of the money collected as long as that county continues to impose a transfer tax similar to that imposed by Montgomery County Code section 52–21(d) (1979)" shall be paid into the Maryland Agricultural Preservation Fund. The latter, using similar language as to Montgomery County, provides for local use of the remaining portion of the tax collected. According to Montgomery County, these provisions render it at least doubtful whether subsection (j) places a ceiling on the full local transfer tax or merely on the agricultural portion of it. We disagree.

On its face, the language of subsection (j) is clear and free from doubt. There is no ambiguity in the phrase "local transfer tax on the transfer of land" or in the similar terms used in the subsection. It is apparent that this language refers to what § 52–20(a) of the Montgomery County Code itself designates "*a* tax ... on the transfer ... of any fee simple interest in real property...." [emphasis supplied]. Section 52–20 appears under the heading "Real Property Transfer Tax" as does § 52–21 which levies that single

property transfer tax at various rates depending on the prior history of the land involved.

The earlier provisions of § 278F do not make subsection (j)'s language ambiguous. The portion of the purpose clause of the title stressed by the county was not in the original bill (Senate Bill 991). It was added by amendment, as were the specific references to Montgomery County contained in subsections (h) and (i). When those amendments were added, the bill contained a version of subsection (j) which read:

> A subdivision of the state may not impose a local transfer tax upon the transfer of agricultural land subject to this section at a rate that is greater than the local transfer tax imposed on improved residential property in that subdivision.

This was deleted and the language of present subsection (j) was substituted by amendment.

■ We think that the title amendment referred to the concurrent amendments to subsections (h) and (i)—both of which demonstrate that the legislature was well aware of the Montgomery County Code and could make specific reference to it when it so desired. That it did not do so in subsection (j) displays an intent that the tax ceiling imposed by that subsection is intended to mean exactly what its plain language states—the ceiling applies to the local transfer tax and all its varying rates. *See Maryland National Bank v. State Department of Assessments and Taxation,* 57 Md.App. 269, 469 A.2d 907, *cert. den.,* 299 Md. 656, 474 A.2d 1344 (1984). This interpretation both accords the words of § 278F(j) their ordinary and natural meaning, and does not render any portion of § 278F surplusage or meaningless. *Mazor v. State Department of Correction,* 279 Md. 355, 360–61, 369 A.2d 82 (1977). The legislative intent plainly expressed is to place a cap on the total tax that may be exacted when land is transferred.

In short, Judge Cave correctly held that § 278F(j) is unambiguous and that it imposes a ceiling on a local trans-

fer tax regardless of the rate imposed on the transfer by § 52–21 of the county code.

JUDGMENT AFFIRMED.   APPELLANT TO PAY THE COSTS.