# THE MARYLAND AGRICULTURAL COLLEGE *vs.* GORDON T. ATKINSON, COMPTROLLER.

*Money not Drawn from Treasury of State During Fiscal Year for which Appropriated.*

The Act of 1902, ch. 625, appropriated a sum of money for certain work to be done by the Maryland Agricultural College, and directed that "the first payment shall be made during the fiscal year ending September 1st, 1902." The Act of 1904, ch. 557, appropriated other sums for work to be done by the said college in connection with Farmers Institutes, and directed that "the said sum shall be payable on and after 1st October of each fiscal year and that the first yearly payment shall be made during the fiscal year ending September 30th, 1904." Upon petition for a *mandamus* directing the Comptroller to pay the appropriations, *held*, that if these sums, or part of them, were not paid during the fiscal year for which the appropriations were made, they may lawfully be demanded and paid thereafter, since it was the intent of the Legislature that the college should receive each year the sums mentioned for the purposes specified, and the direction as to the time of payment is not to be construed as a denial of the power of the Comptroller to pay after the close of the fiscal year, and there is no general law which declares that money not drawn in the fiscal year for which it has been appropriated cannot be drawn thereafter.

Appeal from the Circuit Court for Anne Arundel County (JONES, C. J. and THOMAS, J.)

The cause was submitted to the Court on briefs by:

*Charles H. Stanley*, for the appellant.

*William S. Bryan Jr., Attorney-General,* and *Thos. A. Whelan, Jr.,* for the appellee.          ·

BURKE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Anne Arundel County dismissing a petition for a *writ of mandamus* to be directed against the appellee requiring him to draw his warrant upon the Treasury of the State for the payment of the sums of money specified in the petition.

The Maryland Agricultural College was incorporated by the Act of 1856, ch. 97.   The purpose of its creation was the instruction of young men in those arts and sciences indispensable to successful agricultural pursuits.

The people finding that industry greatly neglected, and believing it to be the duty and within the power of the Legislature to encourage and promote the farming interests of the State, by the Act above-mentioned constituted the plaintiff an Agricultural College, whose duty should be, in addition to the usual course of scholastic learning, to instruct young men attending the college, theoretically and practically, in those arts and sciences, which, with good manners and morals, should enable them to become intelligent, successful, and scientific farmers, and elevate the State to the position its advantages in soil and climate, and the moral and mental capacities of its citizens entitle it to occupy.

By the Act of incorporation, six thousand dollars per annum were appropriated to the payment of salaries of professors, and for such other purposes as should be found reasonably necessary to promote the welfare and success of the college.

The legislation of the State indicates that the people have

manifested a deep and abiding interest in the welfare of the college, and have aided its work by generous appropriations, and by other measures calculated to increase its efficiency, and to enable it to accomplish more fully the useful and beneficient purposes of its foundation. Under the Act of 1864, ch. 90, the State Board of Education became *ex officio* members of the board of trustees of the college. By the Act of 1866, ch. 53, the State purchased a one-half undivided interest in the college property. By the Act of 1868, ch. 326, the Governor, the Comptroller, the Treasurer, the President of the Senate, the Speaker of the House of Delegates, and the Attorney-General of the State became *ex officio* members of the board of trustees, and represented the State's interest in said board, which consists of eighteen members. This board is constituted as follows: The six State officials mentioned above; five members elected by the private stockholders of the college, one person from each Congressional District of the State, appointed by the Governor by and with the advice and consent of the Senate, and the United States Secretary of Agriculture.

The State holds a mortgage of fifteen thousand dollars on the stockholder's one-half interest. The college is controlled by the State, and is practically a State Institution.

In pursuance of what appears to be a settled policy on the part of the State to contribute to the support of this institution, the General Assembly passed the Acts of 1902, ch. 625 and 1904, ch. 557.

The first of these Acts set apart various sums for the use of the college, but in this case we are concerned only with *secs. 5 and 6* of that Act. These sections read as follows:

"*Sec. 5.* In order to provide for the maintenance, repairs and improvements of the buildings of the experimental station, to provide for the printing of bulletins, showing the results of the work, and also to provide for the investigation of the tobacco crop, meat production, and irrigation, an appropriation of five thousand dollars ($5,000) is hereby provided for and made.

*Sec. 6.* The Comptroller be and he is hereby authorized to

issue his warrant upon the Treasury of the State for the several sums hereby appropriated, the same to be paid out of any funds not otherwise appropriated; that said sums of money shall be payable to the Maryland Agricultural College, and shall be expended under the direction of the board of trustees of said institution, and the first payment shall be made during the fiscal year ending September 1st, 1902."

.By *sec. 4* of the Act of 1904, ch. 557, it was provided as follows: That the sum of six thousand dollars per annum be and the same is hereby appropriated for the formation and support of Farmers Institutes in this State; and that the Comptroller be and he is hereby authorized 'to issue his warrant annually upon the Treasury of the State for said sum of money out of any funds not otherwise appropriated; that the said sum shall be payable to the order of the Maryland Agricultural College on, or after the 1st of October of each fiscal year, and that the first yearly payment shall be made during the fiscal year ending September 30th, 1904."

It is admitted that the work contemplated to be done by the College by *sec. 5* of the Act of 1902, ch. 625, has been done by its officers, but the appropriation therein made has not been paid. It is also admitted that two thousand dollars of the appropriation of six thousand dollars made by the Act of 1904, ch. 557 remains unpaid. It is further admitted that said sum of five thousand dollars and said sum of two thousand dollars, appropriated by the Acts aforesaid, are in the treasury of the State, and not appropriated for any other purpose.

On July 17th, 1905, demand was made by the Maryland Agricultural College upon the Hon. Gordon T. Atkinson, Comptroller of the Treasury, for the payment of said several sums of money. Upon the advice of the Attorney-General, the Comptroller declined to pay the money, whereupon the petition for *mandamus* was filed.

The respondent, instead of answering the petition, filed a general demurrer, which the Court sustained, and dismissed the petition. By agreement of parties, all errors in pleading

have been waived. The Comptroller rested his refusal to pay these sums upon the ground that neither of these sums nor any part thereof could be lawfully drawn from the State treasury after the expiration of the fiscal year for which they were appropriated, and as it appeared that these sums were not paid during the fiscal year for which the appropriation was made, there was no warrant of law by which they could now be paid.

This contention raises the question of the proper construction of the Acts of Assembly hereinbefore mentioned under which the appropriations were made. If the position of the respondent is not well founded, and, if the allegations of the petition could be supported by evidence, it must be admitted that the *writ of mandamus* should issue as prayed. Upon a question of statutory construction, the principles which should guide the Court have been repeatedly declared by decisions in this State and elsewhere. The underlying principle of all construction is that the intent of the Legislature should be sought in the words employed to express it, and when found it should be made to govern, not only in all proceedings which are had under the law, but in all judicial controversies which bring those proceedings under review. Beyond the words employed, if the meaning be plain and intelligible, neither officer, nor Court is to go in search of legislative intent; but the Legislature must be understood to intend what is plainly expressed, and nothing then remains but to give the intent effect. If the words of the law seem to be of doubtful import, it may then perhaps become necessary to look beyond them in order to ascertain what was the legislative mind at the time the law was enacted; what the circumstances were under which the action was taken; what evil, if any, was meant to be redressed; what was the leading object of the law, and what the subordinate and relatively unimportant objects. *Cooley on Taxation*, 2 ed. 264; *Gill* v. *Cacy*, 49 Md. 243; *Smith* v. *State*, 66 Md. 215; *Commercial Building Association* v. *Mackenzie*, 84 Md. 195.

There is no general law which declares that money not

drawn in the fiscal year for which it has been appropriated cannot be drawn thereafter, but it is argued that it was the intention of the Legislature that these appropriations should fail, unless drawn during the time mentioned in the Acts.

It was undoubtedly within the power of the General Assembly to have provided that the money should not be paid after the expiration of the fiscal year. That it did not so declare in express, or unquestionable terms must be conceded, but it is contended that this intention is manifest, first, because the appropriations were annual, and secondly, because the first payments were directed to be made during the fiscal years named.

It is to be noted that there is no duty imposed by either Act upon the Maryland Agricultural College to make application for the payment of the appropriations within a specified time, but the authority is given to the Comptroller to draw his warrant upon the Treasurer for the payment of the several sums appropriated to the order of the College, and he is directed to draw his warrant for the first payment during the fiscal years named.

This direction, given in express terms in the Act, was not followed, and it is difficult to say how the failure to pay the money in the manner and at the times provided should operate to defeat the plain and evident intent of the Legislature respecting these appropriations. It is clear that the Legislature intended that the College should receive each year from the State treasury, out of any funds not otherwise appropriated, the several sums mentioned for the purposes specified in the Act, and it indicated the time in which it became the duty of the financial officers of the State to see to the payment.

To construe these directions as to the time of payment to be a limitation, or a denial of the power to pay after the close of the fiscal year would be to frustrate the leading and evident purpose of the Acts, under consideration, as manifested by their language, and as gathered from the foundation, the history, and the relation and settled policy of the State respecting this College.

We are, therefore, of opinion that the Court committed an error in dismissing the petition.

The order of the lower Court will be reversed, and the case remanded for further proceedings in accordance with this opinion.

> *Order reversed, and cause remanded*
> *with costs to the appellant.*

(Decided January 11th, 1906.)