476 A.2d 705

**George C. VOURNAS**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 13, Sept. Term, 1983.**

Court of Appeals of Maryland.

June 22, 1984.

Andrew R. Polott, Washington, D.C. (William L. Farrar, Jr., Washington, D.C., on brief), for appellant.

H. Christopher Malone, Asst. County Atty., Rockville (Paul A. McGuckian, County Atty., and Robert G. Tobin, Deputy County Atty., Rockville, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

DAVIDSON, Judge.

This case presents the question whether the transfer of privately owned real property to the United States as a result of condemnation is a transfer within the scope of Montgomery County Code (1972, 1977 Repl.Vol. & 1982 Cum.Supp.), § 52–19 through § 52–27 (real property transfer tax). More particularly, the question involves the interrelationship of § 52–20, authorizing Montgomery County to impose a transfer tax on real property; § 52–21(d)(4), levying a tax on the transfer of farmland (farmland transfer tax); and 42 U.S.C. § 4653 (1982), authorizing federal

reimbursement of local transfer taxes incurred by an owner of real property condemned by the United States.

Section 52–20 provides in pertinent part:

"(a) ... The county council for Montgomery County is empowered and authorized to levy and impose by resolution or ordinance *a tax to be paid and collected on the transfer in Montgomery County of any fee simple interest in real property* except by way of mortgage, deed of trust, or deed of trust for the benefit of creditors, and on the transfer of any leasehold interest in real property, where such lease contains a covenant for perpetual renewal." (Emphasis added.)

Section 52–21(d)(4) provides in pertinent part:

"There is hereby levied *a tax on all transfers in the county of a fee simple interest in real property* ... such tax to be computed on the value of the full consideration for such transfer at one of the following rates:

.     .     .     .     .

"(d) A percentage of the value of the consideration for the transfer of land ... which, while owned by the transferor, has been assessed at any time during the five years preceding transfer on the basis of being actively devoted to farm or agricultural use ... *said tax to be paid by the transferor of such land,* which percentage shall vary according to the following schedule:

.     .     .     .     .

"(4) Land assessed and taxed to the transferor for more than three years on the basis of farm or agricultural use, six percent." (Emphasis added.)

42 U.S.C. § 4653 provides in pertinent part:

"The head of a Federal agency, as soon as practicable after the date of payment of the purchase price or the date of deposit in court of funds to satisfy the *award of compensation in a condemnation proceeding to acquire real property,* whichever is the earlier, *shall reimburse the owner,* to the extent the head of such agency

deems fair and reasonable, for expenses he necessarily incurred for—

"(1) recording fees, *transfer taxes*, and similar expenses incidental to conveying such real property to the United States...." (Emphasis added.)

The petitioner, George C. Vournas (transferor), was the owner of real property located in Montgomery County. On 7 October 1975, the United States instituted a condemnation proceeding in the United States District Court for the District of Maryland to condemn a portion of this real property. On 12 November 1975, the respondent, Montgomery County (County), filed an appearance in order "to collect any and all County and State taxes which are due on the property as of the date of taking." The County requested "that any County and State taxes that are due and owing on the property taken be paid out of the deposit of estimated just compensation and final award to the extent said proceeds diminish said debt."

On 25 January 1979, the district court determined the amount of compensation to be paid by the United States for the condemned property. Additionally, the district court ordered that the amount of compensation "shall be subject to all liens, encumbrances and charges of whatsoever nature existing against the said land at the time of vesting title thereto in the United States of America and that all such liens, encumbrances and charges of whatsoever nature shall be payable and deductible from said sum." Finally, the district court ordered that upon payment by the United States into the registry of the court the fee simple title to the condemned property shall become vested in the United States "free and clear of all claims and liens...." After the United States paid the compensation award into the registry of the district court, the district court, in response to a petition filed by the transferor, ordered that the amount of the compensation award be delivered to Commonwealth Title Land Insurance Company. The district court further ordered that company to "apply the proceeds of said check to the payment and discharge of all taxes,

assessments, liens and encumbrances against the said property as of the date title vested. . . ."

On 11 April 1979, the documents evidencing the transfer of the real property from the transferor to the United States were recorded in the Land Records of Montgomery County. Notwithstanding the requirement of § 52–23,[1] the transferor did not pay any farmland transfer tax to the County before these documents were recorded. Thereafter, the County demanded payment of the tax allegedly due. The transferor refused to pay the farmland transfer tax.

On 20 June 1980, the transferor filed suit in the Circuit Court for Montgomery County seeking declaratory and injunctive relief. In the declaration, the transferor alleged, insofar as here relevant, that § 52–21(d) is unconstitutional "in that it seeks to tax a condemnee pursuant to an involuntary conversion by the ultimate sovereign, namely the USA." In its answer, the County denied the invalidity of the tax and asserted that the transferor owed a farmland transfer tax. Additionally, the County filed a counterclaim for the amount of the tax. Cross motions for summary judgment were filed.

The trial court decided that § 52–21(d) was constitutional and determined that an involuntary transfer to the United States resulting from a condemnation proceeding is subject to the farmland transfer tax. The trial court further determined that, despite the fact that the farmland transfer tax was not collected out of the proceeds of the condemnation award, the transferor remained liable for the payment of the tax. On 2 February 1982, the trial court entered a final judgment declaring the farmland transfer tax to be constitutional, valid and enforceable. Additionally, the trial court denied the transferor's motion for summary judgment,

---

1. § 52–23 provides:
   "The clerk of the circuit court shall not accept for recording any instrument upon which a tax is payable under the provisions of this article unless such instrument has the official stamp of the director of finance affixed thereto."

granted the County's motion for summary judgment on its counterclaim, and required the transferor to pay the farmland transfer tax plus costs.

The transferor filed an appeal to the Court of Special Appeals. That Court affirmed the trial court's judgment. *Vournas v. Montgomery County,* 53 Md.App. 243, 452 A.2d 1263 (1982). We shall affirm the judgment of the Court of Special Appeals for reasons other than those expressed by that Court.

Here the transferor contends that the scope of § 52–21(d)(4) must be interpreted in the light of the law as it existed when the General Assembly authorized the County to levy transfer taxes. The transferor asserts that the real property transfer tax was enacted in 1961 "at a time when Federal condemnation proceedings were entirely immune from state or local taxation." More particularly, the transferor claims that in 1961 a transfer of property to the United States as a result of condemnation would have been immune from local transfer taxes whether assessed against the United States government or the owner of the condemned property. The. transferor maintains that under these circumstances there was no legislative intent to include a transfer of property to the United States as a result of a condemnation within the scope of § 52–21(d)(4). The transferor concludes that because 42 U.S.C. § 4653, authorizing the reimbursement of transfer taxes to the owner of real property condemned by the United States, was not enacted until 1971, it is not an appropriate factor to be considered in determining the scope of § 52–21(d)(4). We do not agree.

■■■ The cardinal rule of statutory construction is to ascertain the actual intent of the legislative body. *Atlantic Richfield Co. v. Sybert,* 295 Md. 347, 361–62, 456 A.2d 20, 27 (1983); *State v. Loscomb,* 291 Md. 424, 429, 435 A.2d 764, 767 (1981). Ordinarily, when there is an ambiguity in a statute, the circumstances existing and events occurring at the time of the statute's enactment may be considered.

*Kindley v. Governor of Maryland,* 289 Md. 620, 625, 426 A.2d 908, 911 (1981); *Funk v. Mullan Contracting Co.,* 197 Md. 192, 198, 78 A.2d 632, 636 (1951); *Maryland Agricultural College v. Atkinson,* 102 Md. 557, 561, 62 A. 1035, 1037 (1906). However, because laws are intended to apply to the future, events occurring subsequent to a statute's passage may occasionally be considered in determining its scope. *Kindley,* 289 Md. at 625, 426 A.2d at 911. *See* 2A A. Sutherland, *Statutes and Statutory Construction* §§ 49.01 & 49.02 (4th ed. C.D. Sands 1973).

In *Kindley v. Governor of Maryland,* 289 Md. 620, 426 A.2d 908 (1981), this Court considered the question whether the appropriation of public funds for nontherapeutic abortions was within the scope of then Md.Code (1957, 1971 Repl.Vol., 1977 Cum.Supp.), Art. 43, § 42(a)(1), now Md. Code (1982) § 15–103(a)(2) of the Health-General Article. That provision required the Secretary of Health and Mental Hygiene to administer "a program of comprehensive medical and other care" for indigent persons. In 1967, when Art. 43, § 42(a)(1) was enacted, then Md.Code (1957, 1967 Repl.Vol.), Art. 27, § 3 (repealed by Chapter 470 of the 1968 Laws of Maryland) provided that nontherapeutic abortions were illegal. In 1973, the United States Supreme Court determined that state statutes such as Art. 27, § 3 were violative of a female's constitutional right to privacy and that nontherapeutic abortions during the first trimester were legal. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

In *Kindley,* the appellants contended that the scope of Art. 43, § 42(a)(1) should have been interpreted in light of the law as it existed in 1967. Under such an interpretation, the appellants maintained that there was no legislative intent to include nontherapeutic abortions within the scope of § 42(a)(1). In rejecting this contention, this Court said:

"It is true that in endeavoring to ascertain legislative intent we may consider the circumstances existing and events occurring at the time of the statute's passage, however, we must consider also that our laws are ad-

dressed to the future. Where, as here, a statute is phrased in broad general terms, it suggests that the legislature intended the provision to be capable of encompassing circumstances and situations which did not exist at the time of its enactment." *Kindley*, 289 Md. at 625, 426 A.2d at 911 (citations omitted).

Thus, this Court determined that events occurring subsequent to a statute's enactment were appropriate factors to be considered in determining the scope of § 42(a)(1) and held that the appropriation of public funds for nontherapeutic abortions was permitted. *Kindley*, 289 Md. at 629–30, 426 A.2d at 913. We shall here apply the principle of statutory construction enunciated in *Kindley*.

By Chapter 180 of the Laws of 1961, now codified at § 52–20 of the Montgomery County Code, the General Assembly expressly authorized the County to levy and impose a tax on the transfer of *"any* fee simple interest in real property ... at a rate not to exceed one percent of the value of the consideration for such transfer" (emphasis added). Although certain exemptions were expressly established,[2] there was no express exemption from taxation for the transfer of privately owned real property to the United States as a result of condemnation. In 1961, by Ordinance No. 4–109, now codified at § 52–21, the County levied a tax on *"all* transfers in Montgomery County of a fee simple interest in real property ..." (emphasis added). The County established exemptions similar to those of the enabling act.[3] There was no express exemption for land transferred to the United States by condemnation.

---

**2.** Chapter 180 of the Laws of 1961 provided in pertinent part:
"(b) No transfer of any interest in such property shall be taxed hereunder where the transfer is to any nonprofit, hospital, religious or charitable organization, association or corporation, nor to any municipal, county or state government, or instrumentalities, agencies or political subdivisions thereof."

**3.** Ordinance No. 4–109 provided in pertinent part:
"Sec. 5. No transfer of any interest in such property shall be taxed hereunder where the transfer is to any non-profit hospital;

By Chapter 633 of the Laws of 1968, now codified at § 52–20(a)(1), the General Assembly authorized the County to impose a six percent tax on transfers of land that had been actively devoted to farm or agricultural use because such land had been accorded special tax treatment by a preferential assessment. The transferor was required to pay this tax. The purpose of this enactment was to eliminate abuse by land speculators of the preferential treatment accorded farmland. This goal was to be achieved by permitting the County to recapture lost revenues resulting from the preferential assessment. *Rapley v. Montgomery County*, 261 Md. 98, 100, 274 A.2d 124, 125 (1971). In 1969, by Ordinance No. 6–127, now codified at § 52–21(d), the County levied such a tax.

In 1971, by Pub.L. No. 91–646, now codified at 42 U.S.C. §§ 4601 through 4655, the United States Congress enacted the Uniform Relocation Assistance and Real Property Acquisition Policies Act. The purpose of this Act was "to develop legislation establishing a uniform policy for the fair and equitable treatment of persons who are displaced, or have their real property taken for Federal and federally assisted programs." H.R.Rep. No. 91–1656, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin.News, p. 5850. 42 U.S.C. § 4653 expressly authorized federal reimbursement to an owner of real property condemned by the United States for the amount of any local transfer tax incurred. This section made it plain that a transfer of property to the United States as a result of condemnation would not be immune from a local transfer tax if assessed against the owner of the condemned property—the transferor.

---

non-profit religious or charitable organization, association or corporation; nor to any municipality, county or state government, or instrumentalities, agencies or political subdivisions thereof. A transfer, by will or descent, or real property is not subject to tax hereunder."

A review of the legislative history of the relevant State and County enactments demonstrates that the real property transfer tax, applicable to "any" transfer, except those expressly exempted, was phrased in broad general terms. This suggests that the real property transfer tax was intended to encompass circumstances and conditions which did not exist at the time of its enactment. Thus, the enactment of 42 U.S.C. § 4653, an event occurring subsequent to the enactment of the real property transfer tax, is an appropriate factor to be considered in determining the scope of § 52–21(d)(4). That section established that a transfer of real property to the United States as a result of condemnation is not immune from local transfer taxes when assessed against the owner of the condemned property—the transferor.[4] Consequently, we hold that the transfer of privately owned real property to the United States as a result of condemnation is a transfer within the scope of § 52–21(d)(4).[5] Accordingly, the judgment of the Court of Special Appeals shall be affirmed.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.*

*COSTS TO BE PAID BY PETITIONER.*

---

**4.** Under these circumstances, it is irrelevant whether, as the transferor contends, "Federal condemnation proceedings were entirely immune from state or local taxation" in 1961 when the real property transfer tax was enacted.

**5.** In this Court, the transferor presents two additional contentions. The first contention is that a transfer to the United States as a result of condemnation is not a transfer within the scope of § 52–21(d) because the United States is not a "person" and therefore title is not conveyed from "one person to another" as required by § 52–19. Section 52–19 defines the word "transfer" as follows:

"The acts of the parties, or of the law, by which the *title to property* or a leasehold interest in property *is conveyed from one person to another.*" (Emphasis added.)

The second contention is that the County is precluded from collecting the tax because it failed to follow statutorily prescribed remedies that are exclusive.

These contentions were neither raised nor decided in the trial court. Accordingly, they will not be considered here. *In re John H.,* 293 Md. 295, 303, 443 A.2d 594, 598 (1982); Md. Rule 885.