498 A.2d 622

**William H. JONES**

v.

**STATE of Maryland.**

**No. 157, Sept. Term, 1984.**

Court of Appeals of Maryland.

Oct. 8, 1985.

Jerome James LaCorte and Michael Braudes, Asst. Public Defenders, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Stephanie J. Lane, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COUCH, Judge.

Maryland Code, Article 27, § 349, prohibits the unauthorized use of a motor vehicle.[1]  In this appeal, we must decide whether an automobile repairman is exempt from prosecution under this statute after he absconds with the owner's car against that person's express wishes.  We hold that the automobile repairman in this case, petitioner William Jones, was properly charged with a violation of this offense, and affirm the conviction rendered below.

On February 25, 1984, William Jones approached a long-time acquaintance, Paul Chester, in search of work.  Jones, a sometimes automobile mechanic, inquired as to whether Chester had a car in need of repair.  Since Chester at that time owned a vehicle in the requisite condition, he assented to Jones' proposition to fix the car.  Jones accepted the keys to the automobile and promised to return the car in two hours time.  It was agreed that Jones would repair the car either at his home or at his workplace.  Thus the legal relationship between Chester and Jones was that of bailor and bailee.

Jones did not restore the car to Chester at the designated time.  As the hours passed, Chester became increasingly worried about the loss of his automobile.  He attempted to locate his vehicle by visiting Jones' workplace and home.  These and other efforts proved futile.

---

1.  § 349 provides in pertinent part:
    "Unauthorized Use of ... vehicle.
    Any person ... who shall enter, or being upon the premises of any other person, shall, against the will and consent of said person ..., wilfully take and carry away any ... motor vehicle ..., or take and carry away out of the custody or use of any person ..., any of the above enumerated property at whatsoever place the same may be found, ... shall upon conviction ... be adjudged guilty of a misdemeanor, and shall restore the property ..., although it may appear from the evidence that such person, took and carried away the property or any portion of the same ... for his ... present use, and not with the intent of appropriating or converting the same." Md.Code (1957, 1982 Repl.Vol., 1984 Cum.Supp.).

Finally, at approximately 6:00 P.M. that evening, Mrs. Chester, at her husband's request, succeeded in reaching Jones at his home by phone. Mrs. Chester, with Mr. Chester standing with her, instructed Jones to cease further work on the car, and to remain at home until she and her husband were able to retrieve the vehicle. Fifteen minutes later, they arrived at Jones' home only to find that Jones had once again vanished with the automobile. They proceeded to the local police station where Mr. Chester swore out a complaint for Jones' arrest.

Jones was apprehended by police two days later at his place of business. He was charged with violating Section 349 of Article 27 and convicted in the District Court of Maryland sitting in Baltimore City. He appealed the determination of the District Court to the Circuit Court for Baltimore City, where he was again convicted of the same offense after trial *de novo* before a jury.

We granted certiorari in this case to decide whether proof of a trespassory taking was met. Under the facts here we conclude we need not reach this issue because once the bailment was terminated and appellant took the vehicle, there indeed was a trespassory taking.

■ Before analyzing the issue raised by Jones in this appeal, we briefly dispose of that which is not in dispute. Both parties agree that the relationship between Chester and Jones was that of bailor and bailee. They are correct in this admission. Ordinarily, when one undertakes to repair an automobile, or any other good or chattel, for a consideration, the contract created between the parties is called a bailment for hire. *Fox Chevrolet Sales v. Middleton,* 203 Md. 158, 160–61, 99 A.2d 731, 732 (1953); *General Refining Co. v. Harvester Co.,* 173 Md. 404, 414, 196 A. 131, 135 (1938). The owner of the bailed article in such a case is the bailor, and the repairman is the bailee. The bailee receives possession, but not title, to the bailed goods. *General Refining,* 173 Md. at 414, 196 A. at 135.

Equally clear in this case is our role in interpreting the penal statute before us. We have declared in myriad decisions that the cardinal rule of statutory construction is to ascertain and effectuate the real intent of the legislature. *City of Baltimore v. Hackley*, 300 Md. 277, 283, 477 A.2d 1174, 1177 (1984); *Cider Barrel Mobile Home Ct. v. Eader*, 287 Md. 571, 583, 414 A.2d 1246, 1253 (1980). We primarily determine the intent of the legislature by considering the language and terms of the enactment in their natural and ordinary signification. *Hackley*, 300 Md. at 283, 477 A.2d at 1177. Where there is no ambiguity or obscurity in the language of the statute, the Court will not go beyond the verbiage of the enactment. *Id.*

Another canon of statutory construction is that statutes are to be construed reasonably and with reference to the purpose for which the law was passed. *Cider Barrel*, 287 Md. at 583, 414 A.2d at 1253; *State v. Fabritz*, 276 Md. 416, 421, 348 A.2d 275, 279 (1975). Where known, the Court examines the evils or mischief sought to be remedied as a further aid in the exegesis of the statute. *Fabritz*, 276 Md. at 421, 348 A.2d at 279.

Penal statutes, as a general rule, are strictly construed. *Fabritz*, 276 Md. at 422, 348 A.2d at 279. This precept, of course, does not mean that criminal enactments are construed in the narrowest possible light. *See, e.g., United States v. Turley*, 352 U.S. 407, 413, 77 S.Ct. 397, 400, 1 L.Ed.2d 430, 434 (1957). Indeed, all that is meant by the rule is that "courts will not extend the punishment to cases not plainly within the language used." *Fabritz*, 276 Md. at 422, 348 A.2d at 279, quoting *State v. Archer*, 73 Md. 44, 57, 20 A. 172 (1890). Put another way,

"it is the intention of the Legislature that governs in the construction of all statutes so that penal statutes, like other statutes, are to be fairly and reasonably construed and courts should not, by narrow and strained construction, exclude from their operation cases plainly within their scope and meaning. In the final analysis, in con-

struing any statute requiring construction, courts must consider not only the literal or usual meaning of words, but their meaning and effect in light of the setting, the objectives and purposes of the enactment, with the real intention prevailing over the literal intention even though such a construction may seem to be contrary to the letter of the statute." (Citations omitted). *Fabritz,* 276 Md. at 422, 348 A.2d at 279.

Results that are unreasonable, illogical or inconsistent with common sense are avoided whenever possible. *Id.; Cider Barrel,* 287 Md. at 583, 414 A.2d at 1253. And "the circumstances existing and events occurring" when the statute is enacted may be examined when the language of the statute is ambiguous. *Vournas v. Montgomery County,* 300 Md. 123, 128, 476 A.2d 705, 707–08 (1983).

We now turn to the argument raised by petitioner in his appeal. Jones contends, as he did unsuccessfully at trial below, that once he obtained possession of the automobile, that is, once Chester permitted Jones to drive the car away and repair it, Jones could not be convicted of its unauthorized use unless the original permission was obtained by fraud or trick.

■ Under the facts as presented, however, it is clear that once Jones used the Chester vehicle after being told to stop work and leave the vehicle where it was, the bailment relationship came to an end; the use of the vehicle thereafter by Jones was against the will and consent of the Chesters. Thus Jones was not exempt from prosecution under § 349.

We reach this conclusion by looking to the purpose for which the unauthorized use statute was passed. *Cider Barrel,* 287 Md. at 583, 414 A.2d at 1253. Each of the chattels (except for motor vehicles and boats) delineated in § 349 today were also delineated in the original legislation

over one hundred years ago.[2] *See* 1880 Md.Laws, Chap. 164. It is clear that these chattels were inherently mobile, and were doubtless considered to be of great value when added to the statutory scheme. This mobility, coupled with the value of the property and the increased likelihood of damage to person or property should that property be even temporarily appropriated, resulted in "singling out for special treatment" the chattels found in unauthorized use statutes. *See generally* 3 *Wharton's Criminal Law* (14th Ed.), § 363.

Professor Perkins, in his treatise *Criminal Law* (2d Ed.1969), provides further historical explanation for the proscription against unauthorized use of motor vehicles:

"When the automobile began to appear and was limited to the possession of a few of the more fortunate members of the community, many persons who ordinarily respected the property rights of others, yielded to the temptation to drive one of these new contrivances without the consent of the owner. This became so common that the term 'joy-rider' was coined to refer to the person who indulged in such unpermitted use of another's car. For the most part it was a relatively harmless type of trespass, although it was quite annoying if the 'joy-rider' had not returned when the owner came back for his automobile. The chief harm was due to the fact that the 'joy-rider' was frequently not a skillful driver, and sometimes unintentionally damaged the car while using it.

It was when 'joy-riding' was at its height that most of the legislative enactments providing a penalty therefor were passed and the mere prevalence of this type of wilful trespass is sufficient to explain the creation of this

---

**2.** Section 349 protects from unauthorized use "any horse, mare, colt, gelding, mule, ass, sheep, hog, ox or cow, or any carriage, wagon, buggy, cart, boat, craft, vessel or any other vehicle including motor vehicle." In 1880, boats were protected from theft by Art. 27, § 168, "Larceny—ships."

statutory crime. The severity of the punishment attached (the crime being a felony in many jurisdictions) is attributable to two factors: First, the trespass occasionally resulted in great damage to the car, as previously mentioned; second, the prevalence of this kind of trespass made it very difficult to secure convictions in cases of outright larceny of motor vehicles, because the claim of an intent to return usually seemed plausible." *Id.* at 272–73.

Thus when we review the purpose of the statute, *Cider Barrel*, 287 Md. at 583, 414 A.2d at 1253, and when we examine the historical perspective of the proscription, *Vournas*, 300 Md. at 128, 476 A.2d at 707–08, we find that Jones was not exempt from prosecution for unauthorized use of the automobile.

Other jurisdictions, in interpreting the unauthorized use statutes there present, have also concluded that automobile repairmen may be guilty of the offense. For example, in *People v. Alaboda*, 198 A.D. 41, 189 N.Y.S. 464 (1921), the New York Supreme Court, Appellate Division, construed a statute which stated "any person who without the consent of the owner shall ... use or operate ... an automobile ... for his own profit, use or purpose, steals the same and is guilty of larceny." 198 A.D. at 42, 189 N.Y.S. at 465, quoting N.Y. Penal Law § 1293–a. In its discussion of the statute, the Court stated:

> "The placing of a car in a garage for the purpose of repair, cleaning, oiling, etc., exposes the car to the same danger of use, and it is often necessary to try the machine to determine whether the repairs made are effective and operating correctly, and such operation is, of course, with the owner's implied consent, [but] if the person who is thus entrusted with the car for any of these purposes takes it and operates it, or permits it to be operated, for the profit or purpose of persons other than the owner, without the latter's consent, he is within the

mischief of the statute; and it was this kind of a situation which the statute attempted to deal with."

*Id.* at 44–45, 189 N.Y.S. at 466.

An automobile repairman was also accused of unauthorized use of the automobile he contracted to repair in *State v. Cusack,* 27 Del. (4 Boyce) 469, 89 A. 216 (1913). The court ruled that the repairman was properly charged with a commission of the offense,[3] reasoning that the unauthorized use statute was designed to protect owners of automobiles and the public at large. 89 A. at 216. According to the court, a chauffeur, servant or bailee could improperly take the vehicle, and endanger the public, "quite as well" as a stranger to the owner. *Id.* at 217.

The convictions of an automobile repairman and a chauffeur for unauthorized use of a vehicle entrusted to their care were also upheld, respectively, in *Commonwealth v. Osborn,* 27 Pa.Dist. 696 (1913), and *People v. Luster,* 292 Ill.App. 244, 11 N.E.2d 47 (1st Dist.1937).

The common law rule protecting bailees from a larceny conviction following conversion applied only where the property was converted during the bailment. If the bailment was terminated for any reason, the possession vested constructively in the owner. Any appropriation after that time constituted a trespass, and was considered larceny. Brill, *Cyclopedia Criminal Law* (1923), Ch. 21, § 762.

A bailment at common law could be terminated in several ways. A countermand of the bailee's authority, a completion of the purpose for the bailment, or an act of the bailee such as "breaking the bulk" or abstracting a portion of the goods in the bail ended the legal relation of the bailee as bailee. Hochheimer, *Manual of American Criminal Law* (1911), § 72, p. 71. A bailee also voided the bailment if he exceeded the scope of the owner's consent to part with his

---

3. Laws of Delaware, Vol. 27, Ch. 138, § 1 provided:
   "Any person who shall take and operate the motor vehicle of another without the consent of the owner ... shall be guilty of a misdemeanor."

property. *See* Perkins, *Criminal Law*, Ch. 4, p. 246; Brill, Ch. 21, § 772.

Given the facts of this appeal, it is clear the Chesters terminated the bailment. Thus even though Mr. Chester permitted Mr. Jones to drive the car away initially, once the bailment was terminated a trespass occurred in any event.

JUDGMENT AFFIRMED.

PETITIONER TO PAY COSTS.