516 A.2d 615

**In re WANDA B., Robert B., Debbie B.**

**No. 93, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Nov. 5, 1986.

Certiorari Denied March 23, 1987

George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

David P. Kennedy, Towson, for appellees, the children.

Stephen H. Sachs, Atty. Gen., Nancy B. Shuger and Sherry L. Kendall, Asst. Attys. Gen. on brief, Baltimore, for appellee, Baltimore County Dept. of Social Services.

Submitted before KARWACKI, ROBERT M. BELL and WENNER, JJ.

KARWACKI, Judge.

The parents of Robert B., Wanda B. and Debbie B. seek reversal of orders of the Circuit Court for Baltimore County (DeWaters, J.) adjudicating their son and daughters to be children in need of assistance (CINA)[1] and committing them to the custody of the Baltimore County Department of Social Services (DSS) for foster care placement. The appellants make a single contention in this appeal. They posit: The trial judge erred in considering the testimony and report of Dr. Renate Kniffin.

We will place the issue in perspective by reciting the factual background which led up to this litigation and the course the case followed in the trial court.

Since 1972 the B. family unit has received public assistance. Also, the family was provided protective services by the Baltimore City Department of Social Services until 1983 when their care was transferred to the appellee, DSS of Baltimore County. Both appellants suffer from mental

---

**1.** *Child in need of asistance.*—"Child in need of assistance" is a child who requires the assistance of the court because

(1) He is mentally handicapped or is not receiving ordinary and proper care and attention, and

(2) His parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and his problems provided, however, a child shall not be deemed to be in need of assistance for the sole reason he is being furnished nonmedical remedial care and treatment recognized by State law.

Md.Code (1974, 1984 Repl.Vol.), § 3–801(e) of the Cts. & Jud. Proc. Art. All statutory references in this opinion are to this Article of the Code.

illnesses which have required their hospitalization on repeated occasions.

Ample evidence was presented below that the appellants had failed to provide their children with proper care and attention since at least June, 1983, despite the efforts of the staff of the appellee, DSS, to improve the appellants' parenting skills. What finally convinced DSS to remove the children from the appellants' home, however, was not the continuing neglect of the children's physical and emotional needs. Rather, that action was prompted by evidence that the appellant father had been taking baths with his daughters, then aged 10 and 8 years, with the approval of the appellant mother.

On December 6, 1984 the children were placed in emergency shelter care by DSS pursuant to § 3–815(b) and Rule 912a.1. On the following day DSS filed a petition seeking continued shelter care for the children in accordance with § 3–815(c) and Rule 912b. At the same time DSS filed a petition under § 3–812 and Rule 903 asking that the court declare the children CINA. As required by § 3–815(b) and Rule 912a.3., a hearing on the petition for continued shelter care was scheduled for the same day before the court's juvenile master. The appellants appeared at that hearing and requested a postponement so that they might obtain counsel. A postponement was granted until December 10, 1984. The appellants appeared on that day without counsel. Being indigent, they had sought legal services from the Legal Aid Bureau, but they were advised that the Bureau would be providing counsel for their children in the pending proceeding. The appellants were directed to the Office of the Public Defender of Maryland for representation. When the appellants sought representation there, however, they were incorrectly advised that the Public Defender was not able to assist them.

At the hearing on December 10, the juvenile master authorized continued shelter care for the children. She also ordered the appellants to appear for an evaluation by the

court's forensic psychiatrist, Renate M. Kniffin, M.D., on January 11, 1985. Dr. Kniffin filed her report with the court on February 21, 1985.

On January 14, 1985, the juvenile master conducted an adjudicatory hearing on the CINA petition pursuant to § 3–819 and Rule 914. The master recommended that the children be found to be CINA and that, in disposition of that finding pursuant to § 3–820 and Rule 915, the court commit the children to DSS for foster home placement. The appellants appeared at that hearing unrepresented by counsel. Their request for a further postponement in order to obtain counsel was denied.

On January 22, 1985 the Public Defender's Office discovered its earlier erroneous refusal to represent the appellants in this case and filed exceptions on behalf of the appellants to the master's recommendations that the children be adjudicated CINA and placed in foster care. These exceptions were sustained by the court on March 12, 1985, and the case was remanded for a new hearing before the juvenile master because the indigent appellants had been denied representation by the Office of the Public Defender at the adjudicatory and disposition hearings before the master as required by Rule 906.[2]

---

**2.** That Rule in material part provides:
Rule 906. Right to Counsel.
    a. *In all Proceedings—Appearance of Out-of-State Attorney.*
The respondent is entitled to be represented in all proceedings under this Chapter by counsel retained by him, his parent, or appointed pursuant to the provisions of subsection b 2 and 3 of this Rule.

    .    .    .    .    .

    b. *Waiver of Representation—Indigent Cases—Non-Indigent Cases.*

    .    .    .    .    .

    2. Representation of Indigents.
    (a) Unless knowingly and intelligently waived, and unless counsel is otherwise provided, an indigent party, or an indigent child whose parents are either indigent or unwilling to employ counsel, shall be entitled to be represented by the Office of the Public Defender at any stage in a waiver, adjudicatory or disposition

After a hearing on April 22, 1985, the juvenile master again recommended that the children be adjudicated CINA and that they be placed in foster care by DSS. Exceptions were filed to these recommendations by the appellants, who elected a de novo hearing before the court on the issues of the adjudication of their children as CINA and the dispositional placement of the children in foster care. Hearings on the adjudicatory phase of the proceedings were conducted before the court on June 25, 1985 and August 20, 1985. It was at the later hearing that DSS offered the testimony of Dr. Kniffin. Over the objections of the appellants that testimony was admitted subject to being stricken should the court decide upon submission of memoranda from counsel for the parties that the testimony should have been excluded. On February 4, 1986, the court, after considering the written and oral arguments of the parties, ruled that Dr. Kniffin's testimony was admissible. Based on that testimony and the other evidence offered in the two days of hearings before it, the court overruled the exceptions to the master's recommended CINA adjudication of the children. Immediately thereafter, the court held a de novo hearing on the exceptions to the recommendation of the master as to the disposition of the case. In that phase of the proceeding the written report of Dr. Kniffin, which had been filed on February 21, 1985, was considered by the court when it overruled the exceptions to the master's recommendation in disposition of the case that the children be placed in foster care by DSS.

■ The appellants' argument that Dr. Kniffen's testimony was inadmissible at the de novo hearing on their exceptions to the master's recommendation that the children be

hearing, or hearing under Rule 916 (Modification or Vacation of Order).

(b) Upon request or upon the court's own motion, the Office of the Public Defender shall appoint separate counsel to represent any indigent party other than the child if the interests of the child and those of the party appear to conflict, and if such counsel is necessary to meet the requirements of a fair hearing.

adjudicated CINA is based on the fact that the appellants were not represented by counsel on December 10, 1984 when the master ordered them to submit to a psychiatric evaluation by Dr. Kniffin. The appellants assert that since § 3–821 mandates that "[a] party is entitled to the assistance of counsel at every stage of any proceeding under this subtitle," the results of the psychiatric evaluation of them at the time when they were unrepresented should not have been admitted in the adjudicatory hearing of the petition alleging that their children were CINA. We disagree and explain.

To carry out the expressed purposes of the Juvenile Causes Code,[3] the General Assembly has recognized the importance to the judges and masters who are clothed with juvenile jurisdiction of appropriate professional advice concerning children brought before the court. Thus, § 3–818 provides:

> (a) After a petition or a citation has been filed, the court may direct the Juvenile Services Administration or another qualified agency to make a study concerning the child, his family, his environment, and other matters relevant to the disposition of the case.

---

**3.** Section 3–802 states:

Purposes of subtitle.

(a) The purposes of this subtitle are:

(1) To provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this subtitle; and to provide for a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public interest;

(2) To remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior;

(3) To conserve and strengthen the child's family ties and to separate a child from his parents only when necessary for his welfare or in the interest of public safety;

(4) If necessary to remove a child from his home, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents;

(5) To provide judicial procedures for carrying out the provisions of this subtitle.

(b) This subtitle shall be liberally construed to effectuate these purposes.

(b) As part of the study, the child or any parent, guardian, or custodian may be examined at a suitable place by a physician, psychiatrist, psychologist, or other professionally qualified person.

(c) The *report* of the study is admissible as evidence at a waiver hearing and at a disposition hearing, but not at an adjudicatory hearing. However, the attorney for each party has the right to inspect the report prior to its presentation to the court, to challenge or impeach its findings and to present appropriate evidence with respect to it. (Emphasis supplied.)

Our role in ascertaining the legislative intent in construing this statute was defined in *Jones v. State*, 304 Md. 216, 220, 498 A.2d 622 (1985), as follows:

We primarily determine the intent of the legislature by considering the language and terms of the enactment in their natural and ordinary signification. [*City of Baltimore v.*] *Hackley*, 300 Md. [277] at 283, 477 A.2d [1174] at 1177 [ (1984) ]. Where there is no ambiguity or obscurity in the language of the statute, the Court will not go beyond the verbiage of the enactment. *Id.*

In unambiguous terms, a study may be summarily ordered pursuant to § 3–818 at any time after a petition is filed in the court alleging that a child is in a status which gives rise to juvenile jurisdiction under § 3–801 through § 3–835. There is no requirement that the court conduct a hearing prior to ordering a study. None was conducted in the instant case. Since there was no requirement that the court conduct a hearing on the propriety of ordering the psychiatric evaluation of the appellants, as parties to the CINA petition, their entitlement to appointed counsel under § 3–821 and Rule 906b.2. was not implicated.

■ Finally, we observe that the court properly admitted the *testimony* of Dr. Kniffin at the de novo adjudicatory hearing and Dr. Kniffin's *report* at the de novo disposition hearing. We recently pointed out that § 3–818(c) and Rule 905c. created a hearsay exception for admission of evalu-

ative reports at disposition hearings in CINA cases. *In re Colin R.*, 63 Md.App. 684, 691, 493 A.2d 1083 (1985). Moreover, nothing in § 3–818 which bars the use of the *report* at an adjudicatory hearing, because of its nature as hearsay, requires that the testimony of the evaluator be excluded on the issue of CINA adjudication. *Cf.* § 3–811(b) which prohibits the use of such testimony, except on the issue of competence of the child to participate in the proceedings, in an adjudicatory hearing on a petition alleging juvenile delinquency. Rule 905c.[4] which was adopted by the Court of Appeals on November 5, 1976, effective January 1, 1977, expressly authorizes the admission of such testimony. The Standing Committee on Rules of Practice and Procedure of the Court of Appeals in its Fifty-Sixth Report which recommended the adoption of Rule 905 explained:

> The amendments proposed to this Rule substantially rewrite the Rule. Authority to order an examination is found in Sec. 3–818, which provides that the Report of the examination is admissible at a waiver or disposition hearing, but not at an adjudicatory hearing. The proposed amendment is consistent with that Code provision. However, it permits testimony concerning the examination to be admitted at any hearing in a non-delinquency case, and in a delinquency case or one arising under § 3–831, at a

---

**4.** Rule 905c. states:

  c. *Admissibility of Testimony.*

    1. In Delinquency and Contributing Cases.

In delinquency cases and in cases in which an adult is charged with a violation of Section 3–831 of the Courts Article, testimony concerning a study or examination ordered under Section 3–818 of the Courts Article by persons who conducted the study or examination is admissible.

    (i) at waiver and disposition hearings, and

    (ii) at an adjudicatory hearing on the issues of a respondent's competence to participate in the proceedings and his legal responsibility for his acts.

    2. In All Other Cases.

In all other cases, testimony concerning a study or examination ordered under Section 3–818 of the Courts Article by persons who conducted the study or examination is admissible at any hearing.

waiver or disposition hearing, and, on the issue of competence and responsibility, at an adjudicatory hearing.
JUDGMENTS AFFIRMED;
COSTS TO BE PAID BY THE APPELLANTS.